No. 2134

Second Circuit

---

BRENARD MANUFACTURING COMPANY
v. GIBBS

---

(June 2, 1926, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana    Digest—Corporations—Par. 299.**

The purpose of Act 64 of 1918 is to prevent a foreign corporation doing business in this state, from obtaining credit on the strength of unauthorized name and not designed to prevent the organizers of it from recovering from a debtor in this state.

2. **Louisiana Digest—Fraud—Par. 1.**

In order to constitute fraud false representation must relate to matters of fact which exist in the present or have ex-

isted in the past, but representation as to a matter of intention, although it may have influenced the transaction, is not a fraud.

**3. Louisiana Digest—Bonds—Par. 1, 2.**

An instrument does not necessarily have to be signed by a surety in order to be a bond.

**4. Louisiana Digest—Obligations—Par. 76, 102.**

A contract giving one the right to send a special salesman to aid the purchaser does not require that a salesman shall be sent.

**5. Louisiana Digest—Evidence—Par. 215, 222.**

In view of Article 2276 of the Civil Code testimony admitted over plaintiff's objection which had the effect of changing, enlarging, altering and modifying a written contract will not be considered by the appellate court.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. J. H. Stephens, Judge.

Action by Brenard Manufacturing Company against W. G. Gibbs. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

R. L. Garrett, of Shreveport, attorney for plaintiff, appellee.

Scheen and Blanchard, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiff brought this suit to recover of defendant $844.00, and set up as a cause of action that it is the holder and owner of twelve promissory notes aggregating that amount, all executed and signed by defendant and made payable to plain-

tiff, which notes are attached to and made part of the petition.

Plaintiff amended its original petition by setting out that the notes sued on were given for the purchase price of graphaphones or music boxes ordered by defendant from plaintiff under certain order or agency contracts which were given by defendant and sent to plaintiff at Iowa City, Iowa, for approval as stipulated therein, and that after approving said orders the goods ordered were delivered to defendant by delivery to a carrier in Iowa City, Iowa, as provided in the orders, and it attached said orders to and made them part of the amended petition.

Defendant, in limine, tendered an exception to the suit, alleging that plaintiff was conducting business in this state in violation of law and that therefore plaintiff has no right of action.

No action seems to have been taken on this exception by the court.

Subsequently defendant filed answer, reserving his rights under the exception, and admitted that he signed the notes sued on but denies the indebtedness on the grounds that the notes were secured by fraud and without consideration, and he especially alleged that plaintiff's representative had agreed that if defendant would sign the contract and the notes sued on, he, plaintiff, would place a salesman in the territory who would make sales of the machines, but that no salesman appeared and "that on account of the said failure of the agreement and contract the said machines were never taken out of the railroad and the same were returned to the plaintiff at the place they claimed to have consigned the same; that they were duly notified of the failure to carry out the agreement and contract and the true consideration of the said notes, and the plaintiff refused and

failed to carry out the contract and agreement, and therefore the said notes were without consideration and were secured by fraud and your defendant has nothing in value therefor.

There was judgment for plaintiff as prayed for and defendant appealed.

## OPINION

The contract which defendant signed reads in part as follows:

"The Brenard Manufacturing Co., Iowa City, Iowa.

"Gentlemen:

"Upon your approval of this order and agency contract deliver to me at your earliest conveniences, F. O. B. factory or distributing point, the articles mentioned below, in payment for which I herewith hand you my notes aggregating $422.00 which you are to cancel and return to me if agreement is not approved by you." (There were two of these contracts or orders and two sets of notes.)

Then follows a description of the articles ordered and a clause granting to defendant the exclusive agency for plaintiff's line of "Golden-Throated" Claxtonola phonographs in that territory for three years and a clause with reference to discount, etc., and the following:

"If my sales under this contract do not amount to $422.00 (the value of the goods ordered and the aggregate amount of the notes accompanying the contract) you agree to either pay me the difference in cash or repurchase these Claxtonolas and records if returned to you in good order and you are to send your bond in the sum of $422.00 to protect me in the conditions of this contract.

"To make the last above paragraph binding upon you I agree to furnish within thirty days of date hereof 50 names and addresses of persons who may be interested in securing Claxtonolas to whom you

are to send appropriate advertising matter. * * * You are to have the right to send a special salesman into my territory at any time to do field work and promote the sale of Claxtonolas through my agency. * * * In order to protect you in your special methods and plans and in your expenditures this order cannot be countermanded."

This, and one other contract like it together with the notes sued on, were forwarded immediately to plaintiff company at its home office in Iowa City, Iowa, and was accepted on the same date received and the goods shipped promptly by express. When the goods arrived defendant refused to accept them and in order to prevent a sale of them by the express company they were returned to the shippers at their request according to the testimony of Mr. Loveland a member of the plaintiff firm and are being held subject to defendant's orders.

According to defendant's testimony, given on the trial of the case, he refused to accept the goods and to remove them from the express office, and he was asked:

"Q. Well, when these machines came down there you refused to receive them, absolutely? 

"A. Yes, sir, until the man came. That was the agreement with me. I wasn't to take them until he came back. I wasn't supposed to get them out of the express company's office until they furnished a helper."

And he says the agent or helper did not return. He also testified that he would not receive the goods because the plaintiff did not send him the kind of a bond they agreed to send and "I sent the little old certificate he sent me back and told them I was supposed to get a bond, get a guarantee from them".

And he was asked—

"Q. They hadn't complied with the contract as to these material features?

And he said:

"A.  No, sir."

Plaintiff objected to the above and all similar testimony on the ground that parol testimony is inadmissible under Article 2276 of the Civil Code to vary or alter the written contract, and the court admitted it subject to the objection and said:

"But you cannot vary, alter or amend the contract sued on."

It will therefore be observed that defendant resists payment of the notes on three grounds, to-wit:

1.  On the ground, as set out in the exception filed in limine, that plaintiff is a non-resident of the state and was doing business in this state in violation of Act 64 of 1918.

2.  That said notes and contracts were obtained through fraud.

3.  On the ground that plaintiff failed to furnish the bond required by the contract.

4.  On the ground that plaintiff failed to send the salesman into the territory to sell the phonographs.

I.

Taking up these defenses in the order named, we find that Act 64 of 1918 is a penal statute providing that no person or persons shall carry on or transact any business in this state under an assumed name or any name other than his own, without registering with the clerk of court a certificate showing the name under which such business is or is to be conducted and the names of the persons owning or transacting such business with the post office address of such persons, and, in section 5, that any person or persons conducting or transacting any business who shall fail to comply with the provisions of the act shall be guilty of a misdemeanor and subject to a fine of not less than $25.00 nor more than $100.00 and each day such person or firm continues such business shall constitute a separate offense. This is the only penalty which the act provides. There is nothing in the act to indicate that in case a person or firm should violate its provisions his or its business transactions are stricken with nullity.

The testimony shows that the plaintiff firm is a commercial partnership domiciled at Iowa City, Iowa, and composed of Theodore O. Loveland and James L. Records, both domiciled at that place. So far as the record discloses these parties did not comply with Act 64 of 1918 by registering, and defendant contends that their failure to do so strikes with nullity the business transacted in this state.

But the jurisprudence of this and other states is the other way. In construing similar statutes our courts have held that the purpose of such enactments is to prevent a firm from obtaining credit on the strength of an unauthorized name and not designed to prevent the organizers of it from recovering from a debtor.

Wolfe vs. Joubert, 45 La. Ann. 1100, 13 South. 806.

Kent vs. Majoiner, 36 La. Ann. 259.

And in the case of In re Pelican Insurance Co., 47 La. Ann. 935, 17 South. 427, the court said:

"The debtor of such a partnership or firm cannot plead the nullity of his en-

gagement on account of the creditor's violation of the statute where the only penalty fixed by the statute for its violation is making it a misdemeanor and subjecting the offender to a fine."

In the case of Smith vs. Williams, 152 La. 948, 94 South. 859, the court had under consideration Act 64 of 1918, the act invoked by defendant in this case, and it said:

"It is a general rule that in the absence of statute to the contrary a person may transact business and execute his contracts under any name he may choose to adopt, provided no fraud is committed. (Citing 29 Cyc. 270 and L. R. A. 1915D 981 note.)

"And whether there was any fraud committed in this case is a matter of defense, but does not arise on the exception of no cause of action."

But in cases where there is a statute, on the subject it was stated that the courts are divided "as to whether or not the business so done is or is not so stricken with nullity as to preclude any recovery in such cases".

(Citing Hunter vs. Big Four Auto Co., 162 Ky. 778; 173 S. W. 120; L. R. A. 1915D 987) where it was held that no recovery could be had, and said—

"* * * but as said in the note to that case the weight of authority is the other way; and among the courts holding to the contrary are those of Louisiana",

and the cases of Kent vs. Majoiner; Wolfe vs. Joubert, 45 La. Ann. 1100, 13 South. 806; and In re Pelican Insurance Co., 47 La. Ann. 935, 17 South. 427, supra, are cited.

The jurisprudence is therefore settled in this state that under Act 64 of 1918 the business engagements and contracts entered into by a foreign person or partnership in this state are not stricken with nullity, and a person obtaining credit from such a person or partnership cannot escape liability under such contracts merely and solely on account of the fact that such person, partnership or firm failed to comply with the provisions of said statute.

Therefore, if the defendant in this case avoids the effect of his contracts he must do so on other grounds.

II.

The defendant, in answer, sets up that the notes and the contracts were obtained by fraud and that they are therefore without consideration and are of no effect.

But he failed to plead or testify to any act on the part of the agent representing the plaintiff which discloses fraud.

An allegation of fraud by the pleader is but a conclusion reached by him. In setting forth the facts on which he based the allegation of fraud the defendant alleged, in answer, that the plaintiff's agent stated to him an experienced salesman would be sent into the territory to sell the talking machines, and that such salesman did not appear. He does not charge that the agent concealed or suppressed any material fact or that he made any misrepresentation with reference to the kind or quality of the goods in order to induce him to sign the notes and contracts.

"As a general rule, in order to constitute actionable fraud, the false representation must relate to a matter of fact and such fact must be one which exists in the present or which has existed in the past."

12 R. C. L. 244, sec. 14.  And—

"Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions nor upon the mere failure to perform a promise or an agreement to do something at a future time, or to make good subsequent conditions which have been assumed. Nor, it is held, is such non-performance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in the legal sense, a representation and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future or a promise to do it from its nature, cannot be true or false at the time where it is made. A failure to make it good is merely a breach of contract which must be enforced by an action on the contract, if at all. And as in the case of promises, it is generally held that mere assertions on intentions or declarations of future purpose do not amount to fraud."

12 R. C. L. 254, sec. 21.

See: 20 Cyc., p. 20.

In the case of Cage vs. Lewis, 68 Ill. 604, it was held that a false representation as to a matter of intention, not amounting to a matter of fact, although it may have influenced the transaction, is not a fraud in law.

And in Milwaukee Brick Co. vs. Schoknecht, 108 Wis. 457, (84 N. W. 38), it was held that no statement as to what would be done in the future constitutes fraud.

It therefore follows that if plaintiff's agent said everything that defendant says he did, he perpetrated no fraud upon defendant.

### III.-IV.

Defendant testified that plaintiff failed to furnish him the bond as required by the following clause of the contract:

"If my sales under this contract do not amount to $422.00 you agree to either pay me the difference in cash or repurchase these Claxtonolas and records if returned to you in good order and you are to send your bond in the sum of $422.00 to protect me in the conditions of this contract.

"To make the last above paragraph binding upon you I agree to furnish within thirty (30) days of date hereof 50 names and addresses of persons who may be interested in securing Claxtonolas with whom you are to take up correspondence, etc."

It seems that plaintiff did send its bond, but defendant says it was not the kind of bond that he expected, and he was permitted to testify, over plaintiff's objection (the testimony being admitted subject to the objection) that plaintiff's agent told him the bond was to be signed by a surety company.

The contract does not stipulate that a bond with surety should be furnished.

An instrument does not necessarily have to be signed by a surety in order to be a bond.

9 C. J., page 10, paragraph 7.

The contract further stipulates—

"You are to have the right to send a special salesman into my territory at any time to do field work and promote the sale of Claxtonolas through my agency."

It does not require that a salesman shall be sent for that purpose.

Defendant contends that plaintiff's agent agreed that a salesman should be sent, and he was permitted to give testimony to that effect as well as with reference to the kind of a bond which was to be furnished, all over plaintiff's objection.

It is clear that such testimony was not admissible. The contract is clear and unambiguous on these points. Plaintiff was not induced through fraud or duress to

sign the contract and the notes nor did he do so in error of law or fact.

The parol testimony which defendant gave with reference to the understanding between him and the plaintiff's agent had the effect of changing, enlarging, altering and modifying the contract and was against or beyond what was in the act.

C. C., Art. 2276.

Such testimony having been admitted over plaintiff's objection, cannot be considered by us.

In the case of Davis vs. Bierce, 114 La. 663, 38 South. 488, the court held that where a writing—

"* * * although embodying an agreement is manifestly incomplete and not intended by the parties to exhibit the whole agreement but only to define some of its terms, such parts of the actual contract as are not embodied within its scope may be established by parol evidence." (Syllabus.)

The court in that case further held that the rule prohibiting the introduction of parol testimony to vary, contradict or enlarge a written contract is not violated by allowing parol to be given—

"* * * as to a distinct, valid, contemporaneous collateral agreement between the parties which was not reduced to writing, when the same is not in conflict with the provisions of the written agreement."

The court in plain terms recognized the rule that parol evidence is not admissible against or beyond what is contained in the written act, as set out in Article 2276 of the Code, saying—

"It is a recognized rule of evidence throughout the United States"

and cited many authorities. And the court said further—

"The test of admissibility in such cases is whether the evidence offered tends to alter, vary or contradict the written contract or only to prove an independent collateral fact about which the written contract is silent."

In the case at bar, the contract is not silent on the two points at issue. It provides that a bond shall be given and that—

"* * * you (the plaintiff) shall have the right to send a special salesman into my (defendant's) territory at any time to do field work and promote the sale of Claxtonolas through my (defendant's) agency."

Clearly any testimony that plaintiff, through its agent obligated itself to send the salesman into the tereritory enlarges and goes beyond the terms of the written instrument.

See: Hafner Mfg. Co. vs. Lieber Lbr. & S. Co., 127 La. 348, 53 South. 646.

Brenard Mfg. Co. vs. M. Levy Inc., 2 La. App. 577.

For the reasons assigned, the judgment appealed from is affirmed.