OVERTON, J.
 

 This is an appeal from a judgment sustaining an exception of no cause or right of action, after plaintiff had been called upon to elect between which of two inconsistent demands he would proceed upon, and after he had made the election, pursuant to an order of court, directing that an election be made.
 

 The demand is one for $39,600 damages, contained in a petition, consisting of nineteen articles, and in two supplemental petitions. We shall endeavor to give, as briefly as possible, a summary of the important allegations of the petitions, to the end that the causes of action, if any, set forth, may be perceived the more readily.
 

 The facts to be considered in disposing of the exception necessarily must be taken from the face of the petition and supplemental petitions, for, upon the trial of an exception of no cause or right of action, the introduction of evidence, is not permissible, but •the facts alleged — not the conclusions of law —are accepted as true for the purposes ■ of the exception. So proceeding, the facts alleged are as follows:
 

 On September 8, 1929, plaintiff executed a written contract of lease in fávor of the Shell Petroleum Corporation, leasing to that corporation a part of a triangular block, in the city of New Orleans, for use as a gasoline station. The property, at the time plaintiff signed the lease, was being used by him as a gasoline station. Plaintiff then had with the Texas Company a contract to sell that company’s gasoline, which he was induced to surrender.- The lease included the improvements on the property, which, in turn, included the filling station paraphernalia, belonging to the premises. The rent, under the lease, was to begin less than a month after its date, namely, on October 1, 1929. The consideration for the lease was $100 a month for the first five years and $110 a month for the remaining five years of the ten years for which the lease was to run. The lease secured to,defendant the privilege of renewal for five years and the option to purchase the property leased, during the term of the lease, for the sum of $18,000.
 

 When the lease, which was prepared by defendant, was signed by plaintiff, plaintiff was informed that it had to be sent to St. Louis to be signed by one of the higher officers of the corporation. The lease was returned to New Orleans, signed by one of the vice presidents of defendant, in behalf of the company, and was then recorded in the conveyance office of the parish of Orleans by defendant.
 

 ■ Although defendant had received the contract of lease in New Orleans, signed by its proper officer, and had recorded it, it nevertheless failed to take possession of the prop
 
 *495
 
 erty, notwithstanding plaintiff was ready and willing to deliver possession of it, and made every reasonable effort to have defendant take possession, but defendant, disregarding plaintiff’s rights, requested of the latter the performance of many useless acts, one request following a compliance with the other, before defendant would take possession under the lease it had signed. The acts enumerated are the furnishing of an abstract of title, costing $100; next a demand for evidence from Washington showing that plaintiff’s property was .not a part of some old Spanish grant; next a request for the matrimonial status of parties, who had owned the property some twenty or thirty years before; next a demand that the lease be made by plaintiff and his wife, although, as the head and master of the community of acquets and gains, plaintiff had full authority to lease the premises; and, finally, after plaintiff had complied with these demands, defendant made another of him, making the fulfillment of the demand a condition to defendant’s taking possession. This demand was that plaintiff must have the holder of notes, secured by mortgages on the property, subordinate the mortgages to the lease, notwithstanding that the mortgages were on the property and of record at the time the lease was signed, and their existence known, or should have been known, to defendant. This demand, as defendant knew, plaintiff could not and would not comply with.
 

 After the lease had been signed by both parties, plaintiff put defendant in default by repeated written demands, calling upon it to comply with the terms of its contract by taking possession of the property and paying the rent, and informing defendant that its failure to do so would result disastrously to him and cause him to lose his property, but defendant refused to comply with the terms of the contract.
 

 In January, 1930, plaintiff wrote to defendant, requesting it to cancel the lease and the inscription in the conveyance office, but defendant refused to do so.
 

 According to the petition, at the time defendant induced plaintiff to sign the lease, which it later had its vice president sign, and which it caused to be registered in the conveyance office, defendant was animated by a desire to embarrass and injure plaintiff by tying up his property, so that he could not use it, defendant knowing full well that if it did not comply with its contract and pay the rent, plaintiff could not keep up his payments to the homestead association, and that he would lose his property, which he did, as the result of defendant’s acts.
 

 Plaintiff alleges that, as a result of defendant’s recording its lease in the cpnveyance office and casting a cloud upon his title, he was prevented from advantageously handling his property, or from securing other tenants, and has suffered damages as follows: $12,-600, the amount of rent he would have collected had defendant complied with itá contract ; $100, the cost of an abstract; $1,000, commission due a real estate agent for negotiating the contract of lease; and $25,000' for the loss of his property, due to defendant’s illegal, unwarranted, malicious, and tortious acts, already detailed.
 

 Defendant excepted to the petition on the ground that two causes of action, contrary to
 
 *497
 
 and exclusive of each other, are set forth in it, and hence plaintiff should be ordered to elect which one of them he will prosecute: “(1) As to whether he will proceed with his action on the basis of a suit in damages for failure of the defendant to pay to plaintiff the rent specified in the alleged lease between plaintiff and defendant; (2) as to whether he will proceed with his action on the theory of a' suit in damages, because of the casting of a cloud upon plaintiff's title by the recording of said lease in the conveyance office, and by the alleged refusal to cancel the inscription thereof.”
 

 In an amended petition, plaintiff, after declaring that his suit was not one for rent, elected to proceed on the 'cause of action referred to in paragraph 2 of the motion to elect.
 

 Defendant then filed an exception of no cause or right of action against the demand, remaining. Plaintiff then filed an amended petition, which makes no material change in the original petition. The exception of no cause of right of action, as said, was sustained, and plaintiff’s demand dismissed.
 

 We observe no complaint in plaintiff’s brief as' to the ruling of the court on the motion to elect. It seems to us that the ruling thereon was correct. As urged, in'large part, by counsel for defendant, in support of the motion, the petition contains two causes of action inconsistent with and exclusive of each other, one of which may be described as the failure to pay the rent and the second as the casting of a cloud upon the title to the property by entering into a lease and recording it with no intention of taking actual possession and paying rent, but with the intent and purpose of ruining plaintiff, who was then in financial straits, and who could not long delay making some beneficial disposition of his property by lease or otherwise.
 

 Passing to the exception of no cause of action, directed against that part of the petition, still remaining, it is defendant’s position that the action is one for damages for slander of title to property. It is further defendant’s position, citing Newell on Slander of Title (4th Ed.) p. 197, that three things are necessary to maintain such an action, the first of which, it argues, is not present here. These things are: “(1) The words must be false; (2) they must be maliciously published; (3) they must result in a pecuniary loss or injury to the plaintiff.” In support of the necessity for the falsity of the words, defendant also cites Newell on Slander and Libel, p. 198; Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515, 522; Cardón v. McConnell, 120 N. C. 461, 27 S. E. 109; and 37 Corpus Juris, p. 131.
 

 If plaintiff’s cause of action, upon the ground that he has elected to proceed upon, was for slander of title for the recording of the lease he had voluntarily signed by defendant, defendant, we think, would be correct in his position, for then the words would not be false. But, if the allegations of the petition be true, which we must accept, them as being for the purposes of the exception, the complaint goes 'further. In several places in the petition, especially in article 15 thereof, and in the second supplemental petition, which reaffirms the allegations of the original petition, it appears that facts are alleged which show that, when defendant induced plaintiff to sign the lease, it did so with no.
 
 *499
 
 intention of carrying out its terms, but with tbe intent to ruin plaintiff by forcing bis property to sale, at a time when defendant was aware that, due to plaintiff’s financial condition, he was unable to protect himself effectively, and further facts are alleged which show that defendant published the lease, by recording it, pursuant to this design. Such acts are deemed, in law, fraudulent, and make the publication of the lease a publication of a false act, since it was procured with no intention of carrying out the contract, but to accomplish a sinister design.
 

 We are aided in reaching the conclusion that plaintiff discloses a cause of action by article 2315 of the Civil Code, which provides that “every act whatever of man that causes •damage to another, obliges him by whose fault it happened to repair it.”
 

 The judgment, sustaining the exception of no cause or right of action, but not that requiring the election which is affirmed, is set aside, and judgment is now rendered overruling the exception of no cause or right of action, and remanding the case to be proceeded with consistently with the views here expressed.