HERGET, Judge.
Plaintiffs filed suit seeking a recision of a sale of Lot 372 of Highland Lakeshore Estates; a recision of a written agreement to purchase Lots 437-B and 438-B of said Highland Lakeshore Estates, and for the cancellation of a note made in connection with the contract of sale in the amount of $880.
The purchase of Lot 372 was for $1,505.75 cash. By contract to purchase the other lots Plaintiffs were allowed a credit of $1,885 representing the valuation placed on their lot 372. For the balance of the price between said sum and the agreed sale price of $2,500.70 for Lots 437-B and 438-B, Plaintiffs executed their note for $880. Plaintiffs sought to cancel the contract for the purchase of the two lots based on the allegation Defendant was unable to give title to the lots inasmuch as same were encumbered with a mortgage to the Federal Land Bank. That part of the suit having for its purpose the cancellation of the contract for the purchase of lots 437-B and 438-B and the cancellation of the note executed in connection therewith was removed from consideration when Defendant con-cededly admitted its inability to give title to said lots and deposited in the registry of the court the monies paid by Plaintiffs on the note. So there remains only the issue of the recision of the sale of Lot 372. In Plaintiffs’ petition they seek cancellation of this sale because of fraudulent practices resorted to by Defendant and its agents in representing to Plaintiffs its present intention to install sewerage and electric facilities and water lines and to retain the necessary personnel to maintain the property suitable for residential purposes. There was introduced on the trial of the case brochures prepared by Defendant wherein it represented the property to be a veritable paradise with country club, golf course, sandy beach, a spring-filled lake stocked with fish, facilities for swimming and boating and adequate facilities for barbecuing and picnicking.
From a judgment of the Trial Court setting aside and canceling the sale, Defendant perfected a suspensive appeal to this Court.
Learned counsel for appellant strenuously urges in this Court the Trial Court was in error in finding the purchase by Plaintiffs of the lot in question was induced by the false representations of Defendant and the Court erroneously considered as actionable fraud,' statements promissory in *112 nature and relating' to future actions. It is appellant’s contention the burden of proof rests upon Plaintiffs to prove at the time the promises were made on which Plaintiffs rely there was then no intention on the part of Defendant to comply therewith and, of necessity, the burden rests upon Plaintiffs to prove at that time Defendant had no intention to act in accordance with its promises. In support of the contention Defendant did in fact have the intention of complying with the representations made for future improvements, Defendant offered in evidence elaborate detailed plans and specifications for a water system prepared by one J. R. Joyner, Civil Engineer.
One’s intentions being subjective, it is most difficult to prove what they may be. The mental processes of the individual are so well concealed that one can, without too much difficulty, keep from another his thoughts. As so wonderfully expressed by Charles Dickens in “A Tale of Two Cities,” Chapter 3:
“A wonderful fact to reflect upon, that every human creature is constituted to be that profound secret and mystery to every other. A solemn consideration, when I enter a great city by night, that every one of those darkly clustered houses encloses its own secret; that every room in every one of them encloses its own secret; that every beating heart in the hundreds of thousands of breasts there, is, in some of its imaginings, a secret to the heart nearest it! Something of the awfulness, even of Death itself, is referable to this. No more can I turn the leaves of this dear book that I loved, and vainly hope in time to read it all. No more can I look into the depths of this unfathomable water, wherein, as momentary lights glanced into it, I have had glimpses of buried treasure and other things submerged. It was appointed that the book should shut with a spring, for ever and for ever, when I had read but a page. It was appointed that the water should be locked in an eternal frost, when the light was playing on its surface, and I stood in ignorance on the shore. My friend is dead, my neighbour is dead, my love, the darling of my soul, is dead; it is the inexorable consolidation and perpetuation of the secret that was always in that individuality, and which I shall carry in mine to my life’s end. In any of the burial-places of this city through which I pass, is there a sleeper more inscrutable than its busy inhabitants are, in their innermost personality, to me, or than I am to them?
“As to this, his natural and not to he alienated inheritance, the messenger on horseback had exactly the same possessions as the King, the first Minister of State, or the richest merchant in London.”
However, perhaps the most reliable basis on which intentions can be weighed is by a review of the actions of the party following the promise.
The evidence reflects: (1) instead of a spring-filled lake there was a dam constructed and pump installed capturing the waters of the Comite River to fill the lower portion of the acreage to provide a lake; (2) while sand was hauled in to provide the “beautiful beach”, same has disappeared; (3) the water level of the lake dropped to a minimum; (4) no sewerage or water system was installed; (5) no golf course was built; (6) no electrical system was installed; (7) no beautiful shell roads were maintained but, to the contrary, they are overgrown; and (8) no personnel was retained to maintain this paradise in effect. The promoters of this project, like the Arabs, folded their tents and departed in the night, abandoning the project, and left no one in charge. In fact, the exhibit referred to showing the project’s plans for the water system was found by some of the property owners who are now seeking to protect their investment in the vacated building abandoned by Defendant. Under *113 such a showing, it is apparent the whole project was simply a promotional scheme and Defendant miserably failed to provide the promised facilities, so it is evident such intentions were fraudulently made. Plaintiffs’, who had purchased the property for a haven of rest when Mr. Turner retired from his arduous duties with the Standard Oil, would never have purchased the property except upon the firm belief the present promises of Defendant would be carried out and the listed improvements made. As evidence of the present condition of the property, there was offered in evidence the testimony of a realtor of Clinton, Louisiana, in the parish wherein the property is located, to the effect that in his opinion the present value of the lot is $50. There was also offered in evidence copies of Sheriff’s deeds on two foreclosure proceedings wherein one of the lots was sold for $175 and the other for $200. Thus, it is apparent because of the failure on the part of Defendant to comply with the promises made Plaintiffs, the present value of the land is reduced to a minimum. It being simply rural acreage reduced by subdivision into lots with little or no improvement facilities or conveniences provided to justify the enhanced price paid for the lot purchased solely on promises of such enumerated improvements. Though this is not an action to rescind the sale because of lesion beyond moiety, the evidence does reflect the materiality of the representations fraudulently made, in consequence of which artifice was practiced upon Plaintiffs in persuading them to purchase the property.
In 37 C.J.S. Fraud § 6, page 222, we find:
“As appears infra § 7, there can be no fraud without misrepresentation. In order that there be actionable fraud, the representation must relate to a matter of fact. Further, it must, ordinarily, relate to a past or existing fact, or an alleged past or existing fact, and not to the future, or future events or occurrences, but qualifications of this general rule will appear in succeeding sections. * * * ”
And in 37 C.J.S. Fraud § 11, at page 234, we find:
“Limitations and qaulifications of rule. In the application of the general rule that fraud cannot ordinarily be predicated on unfulfilled promises or statements as to future events, exceptions or limitations have arisen; it is not the rule that all false representations as to future events, or all unperformed promises, are nonactionable. The rule as to a promise made with the intention of not performing it is considered infra § 12. The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker’s knowledge, or as to which he professed to have special knowledge, or if artifice was used to prevent the hearer from learning the truth; nor will redress be refused if the promises or predictions also involve, or are coupled with, a misstatement or concealment of existing facts, as where the prediction or promise necessarily includes a misstatement of the existing facts on which it is based, such as the present capacity of particular articles to perform future work, the power of an educational institution to grant degrees within a given time, the past experience on which the speaker bases his prediction, or the present control of property or business, or possession of equipment, requisite to fulfill the promise made. In such case it is no defense that reliance was placed on the promise as well as on the representation; but a false representation accompanying a promise will not amount to fraud if it is immaterial without the promise. Obviously the person making statements cannot escape liability on the plea that they related to the future if he misrepresented hopes as facts, contingencies as existing conditions, or contemplated arrangements *114 as arrangements already agreed on. (Emphasis ours.)
“Where a relation of trust and confidence exists between two parties, so that one of them places peculiar reliance in the other’s trustworthiness, the latter is liable for representations as to future conduct, and not merely as to past facts.
"A future promise may be fraudulent when it is part of a general scheme or plan, existing at the time, to induce a person to act, as he otherzmse would not, to his injury.” (Emphasis ours.)
LSA-C.C. Article 1832 provides:
“Withholding information regarding error in the motive
“In all cases, however, when the information, which would have destroyed the error, has been withheld by the other party to the contract, it comes under the head of fraud, and invalidates the contract.”
LSA-C.C. Article 1847, in part, provides:
“Fraud, definition; elements of fraud
“Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. * * * ” (Emphasis ours).
Thus, the artifice practiced on Plaintiffs by Defendant, created and continued by the representations and promises by Defendant of its intention to provide the peaceful retreat, would reasonably give Plaintiffs reliance on the actuality of having a wonderful place of resort.
In LeBoeuf v. Duplantis, La.App., 162 So. 592, in referring to a suit to set aside a deed on the contention of the grantor’s heirs that grantor’s signature had been forged, this Court concluded the evidence in support of such allegation should be “strong, clear, and positively convincing,” which language was the basis for syllabus number 3 therein:
“3. Deeds
“Sales: Strong, clear, ánd positively convincing proof is required to set aside authentic deed for forgery of signature thereto, rather than ordinary preponderance of testimony which must prevail for plaintiff in ordinary civil action to recover (Rev.Civ.Code, art. 2236).”
Likewise, in Domangue et al. v. Duplantis and Chauvin v. Duplantis, La.App., 162 So. 596, this Court held the evidence was insufficient to set aside a sale on the allegation that vendor’s signature was obtained through fraud and misrepresentations by grantee and in the syllabus, (prepared not by the Court but by the Editorial Staff) though we find no statement to that effect in the body of the opinion, we find:
“2. Deeds
“Sales: Strong, clear, and positively convincing proof is required to set aside authentic deed for procurement of signatures thereto through fraud and misrepresentations, rather than ordinary preponderance of testimony which must prevail for plaintiff in ordinary civil action to recover.”
In our opinion, the proof of fraudulent acts must be convincing, though we find no basis for requiring additional evidence than a preponderance of proof and, as in all civil cases, the burden rests upon a plaintiff to prove its case by a preponderance of evidence, not beyond a reasonable doubt.
In the case of Brenard Mfg. Co. v. Gibbs, 9 La.App. 137, 119 So. 483, relying upon the citation of 12 R.C.L. 244, Section 14, the Court concluded fraud must relate to then existing or previously existing facts and could not be predicated upon statements, promissory in their nature and relating to future actions.
*115 In Van Vracken v. Harry J. Spiro, Inc., La.App., 139 So.2d 89, plaintiff sought to set aside a contract to purchase a lot in a subdivision on the ground of fraudulent representations made to the purchaser by agents of the promoter of the subdivision that “streets would be cut through the undeveloped acreage within a year or two and that a country club would be erected in the near future in an area which the salesman pointed out.” The agent furnished plaintiff with a map depicting how the subdivision would appear following these developments and provided visual inspection of a neighboring subdivision representing to plaintiff the proposed subdivision in which plaintiff was offered a contract to purchase would be similar thereto and plaintiff would be permitted to erect a home on the property within a year. As a result of these statements plaintiff was beguiled into contracting to purchase the property. The Cour' concluded:
“It is a well-settled principle of law that parol evidence, generally, is not admissible to vary obligations set forth in written agreements; however, the rule is not applicable when a litigant seeks to annul the contract because he failed to consent to the terms thereof due to the misrepresentations of the other party.
“The misrepresentations alleged in plaintiff’s petition, if proven, constitute fraud, which vitiates the contract.
“In view of what we have said here-inabove, the ultimate question posed for our consideration is whether the trial judge properly found as a fact that defendants’ agent did misrepresent a material fact, which vitiated the contract.
“A careful analysis of the record, particularly the very impressive testimony of both the plaintiff and his father, convinces, (sic) us that they were beguiled into believing that they could each erect a home upon this property within a year, and this conviction, which resulted from Reith’s misstatements, was the motivating factor which induced plaintiff to agree to the purchase thereof. Since the contract is an absolute nullity, plaintiff is entitled to the return of his deposit in the amount of $900.”
In our opinion Plaintiffs have proven by a preponderance of the evidence the artful deceit practiced upon them, in consequence of which they are entitled to the relief prayed for.
For these reasons, the judgment is affirmed.
REID, J., not participating.