James S. Swann, Jr., together with his brother and sister, brought suit to recover damages against defendant, Southern Utility Company of Shreveport and its president, Magouirk, alleging the latter made misrepresentations and fraudulent statements regarding material facts with intent to deceive plaintiffs in granting to defendants a mineral lease on approximately 257 acres of land at one dollar per acre.
No effort is made by plaintiffs to rescind or reform the lease, their action being one for damages for fraud predicated entirely upon Article 2315 of the Louisiana Civil Code, LSA. At conclusion of the trial the lower court, assigning no written reasons, rendered judgment in favor of defendants.
The court ruled in the beginning of the trial that the principal allegations in the petition concerned matters covered by the written contract of lease and oral testimony in support thereof was inadmissible inasmuch as it would tend to vary the terms of the written instrument. He further concluded the petition failed to allege fraud sufficient either to rescind the lease or to give rise to an action for damages should the allegations be proved. Nevertheless, under Article 1636 of the Louisiana Code *Page 750 
of Civil Procedure, LSA, plaintiffs were allowed to offer all proof and to make up the complete record for this court's consideration should we determine the lower court was in error in excluding such testimony. Since we have before us the complete record we shall assume, in determining this case, the evidence was admissible for the purpose of attempting to establish plaintiffs' right to damages for fraud under Article 2315 of our Civil Code, LSA.
On this appeal we are concerned with a situation in which Swann, as agent, had control over the delivery of a mineral lease contract, dated August 29, 1961, already signed by the individuals owning the property at the time. He claims that he was holding up delivery of this lease until after his discussion of it with Magouirk in order to determine: (1) whether the lease was similar to or "like" other leases procured by defendant on property surrounding theirs; (2) in order to try to get a better price per acre for the lease; and (3) in order to obtain the insertion of a nonassignability clause in the lease.
It is agreed defendant Magouirk spent some four or five hours in Swann's home discussing these and other matters on the evening prior to the manual delivery of the lease to defendant, and that no insertions or changes were made in the printed lease.
Swann contends that on the evening in question he was assured by Magouirk the lease he was delivering was "just like" the other leases on surrounding property; that he, Magouirk, knew a recently perfected technique which would "virtually guarantee" production; that defendant would begin operations to fully develop the property; that the lease would not be assigned, but in the event it was assigned Magouirk would pay Swann the difference between the $1 per acre in the lease and the amount which might be received by an assignment; and that if production was not obtained on the lease that drilling equipment, worth approximately $7,000, would be left on the property for plaintiffs' benefit.
It is claimed the foregoing statements, allegedly made by Magouirk to induce delivery of the lease, were false representations made with no intent to perform them, and as such constituted fraud for which plaintiffs claim damages in the amount of $18,941.67, being the difference between $1 per acre paid by defendant and the $100 an acre for which defendant sold the lease.
Defendants' answer admits the conversation with Swann and that in the conversation they discussed methods of drilling and completing wells in the area; but denies all allegations relative to misrepresentations or fraud in connection with the lease, denying each promise attributed to him by plaintiffs.
As an affirmative defense it is alleged, and not disputed, that defendants spent a large sum of money in search of oil and gas on the property involved and the relatively new "fracking" technique discussed above was used, but the effort resulted in a nonproducer. It was not until two or three months after the well was completed and had been "on the pump" that it was classified as nonproductive. Thereafter, on May 17, 1962 defendants sold the aforesaid lease to the Pan American Petroleum Corporation for $100 an acre. It was following this sale that plaintiffs brought the present suit.
Appellants specify as errors the following:
 1. That the District Court committed error in failing to admit parole evidence to prove the fraudulent misrepresentations of the defendant, D.P. Magouirk.
 2. That the District Court committed error in holding that plaintiffs' petition failed to allege fraud.
 3. That the District Court committed error in failing to find that the defendant, D.P. Magouirk, had perpetrated a fraud upon the plaintiffs *Page 751 
in order to induce them to execute the mineral lease in question.
Louisiana courts have long recognized that a party who is injured by the fraud and deceit of another has a cause of action against the offending party for damages. However, cases cited by appellants supporting this rule are factually inapposite to the instant case with the exception of Maniscalco v. Shell Petroleum Corporation, 176 La. 492, 146 So. 33 (1933). There the petition alleged defendant lessee induced plaintiff to execute and record a lease with the intent, not to carry out the terms thereof, but to force the sale of the property, and it was held the petition stated a cause of action for damages by casting a cloud on plaintiff's title.
The Maniscalco case, supra, also can be distinguished on several grounds. The failure of defendant to comply with the lease and the fraudulent intent not to comply at the time of signing were proved beyond doubt by a series of acts all bound up in a grossly fraudulent general scheme and course of conduct which caused the plaintiff's damage. The plaintiff in that case lost over $12,000 in rent as well as finally losing his entire property. He elected to sue for damages for fraud rather than breach of contract.
In an early annotation, 51 A.L.R. 49, the general rule, supported by numerous decisions in almost all jurisdictions, is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events.
In a subsequent annotation, 91 A.L.R. 1296, the general rule is reiterated, followed by innumerable citations including two Louisiana cases, the first being Brenard Manufacturing Co. v. Gibbs (2 Cir. 1928) 9 La. App. 137, 119 So. 483, in which defendant sought to avoid payment of 12 notes given as the purchase price for merchandise ordered from plaintiff, but never taken out of the railroad station. Defendant denied the indebtedness on the grounds the notes were secured by fraud and without consideration and he especially alleged that plaintiff's representative had agreed if defendant would sign the contract and the notes sued on, he, plaintiff, would place a salesman in the territory who would make sales of the machines, but that no salesman appeared. The court, in disposing of the allegation of fraud cited 12 R.C.L. 244, sec. 14:
 "As a general rule, in order to constitute actionable fraud, the false representation must relate to a matter of fact and such fact must be one which exists in the present or which has existed in the past."
And the court further cited 12 R.C.L. 254, sec. 21:
 "[S]ince a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions nor upon the mere failure to perform a promise or an agreement to do something at a future time, or to make good subsequent conditions which have been assumed. Nor, it is held, is such non-performance alone even evidence of fraud. Reasons given for this rule are that a mere promise to perform an act in the future is not, in the legal sense, a representation and a failure to perform it does not change its character. Moreover a representation that something will be done in the future or a promise to do it from its nature, cannot be true or false at the time when it is made. A failure to make it good is merely a breach of contract which must be enforced by an action on the contract, if at all. And as in the case of promises, it is generally held that mere assertions on intentions or declarations of future purpose do not amount to fraud." *Page 752 
The second case cited is Brinker v. Feist (2 Cir. 1930)14 La. App. 101, 129 So. 416. The court, in deciding adversely to plaintiff who had alleged she was induced to sign an authentic act by fraudulent promises, had this to say:
 "* * * The allegations of plaintiff's petition affirmatively show that she voluntarily and freely assented to the act. She alleges that the purchaser made certain promises with reference to the lease of some real estate. Statements promissory in their nature and relating to future actions do not constitute actionable fraud. To constitute actionable fraud, the false statements, if such are made, must relate to facts then existing or which have previously existed. See Brenard Mfg. Co. v. Gibbs, 9 La. App. 137, 119 So. 483, and authorities there cited and quoted; Hemler v. Adcock, 166 La. 704, 117 So. 781."
A reading of the numerous cases and authorities cited in appellants' brief has served only to convince us of the correctness of the lower court's decision. The majority of the cases cited deal with admissibility of parole evidence in a suit to rescind a contract for error due to fraud and are therefore inappropriate to this decision.
This much we can say — all allegations of fraud stem from promises which Swann claims he extracted from defendant Magouirkafter the lease was signed by the owners but before he delivered the instrument. Nowhere does he claim he would not have delivered the lease if such promises had not been forthcoming. Furthermore, plaintiffs expressed no real dissatisfaction with the lease until after a well was drilled on their property.
In other words, a producing oil well would have been much more profitable both to the plaintiffs and the defendants than a subsequent lease to a major oil company.
In conclusion, we feel plaintiffs have failed to prove intentional misrepresentations of fact and consequent damage sufficient to constitute fraud under LSA-C.C. Art. 2315. Rather, by their own testimony, they have convinced us the real motive for granting this lease to defendants for such a small sum was to insure immediate commencement of proper drilling operations on their property. This was done. The Louisiana cases are legion holding the charge of fraud is a most serious charge placing upon the one who alleges fraud the burden of establishing it by legal and convincing evidence and that exceptionally strong proof must be adduced. The attempted proof in the instant case falls short of that necessary to establish (1) the fact of the promises made with intent to defraud; (2) that, if made, they were misrepresentations of a present or pre-existing fact; and (3) that plaintiffs have suffered any damage from such representations.
For the reasons assigned the judgment of the lower court is affirmed, all costs to be borne by appellants.
Affirmed.