180 So.2d 815 (1965)
Dr. George POLUSKY
v.
ALLSTATE PETROLEUM, INC., et al.
No. 1968.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1965.
*816 Gibson Tucker, New Orleans, for plaintiff-appellee.
Charles A. Kronlage, Jr., New Orleans, for defendants-appellants.
Before McBRIDE, HALL and BARNETTE, JJ.
HALL, Judge.
Plaintiff, a resident of New York, brought this suit to recover the sum of $2,000.00 paid by him to Allstate Petroleum, Inc., for the purchase of an undivided 1/256 share of the working interest owned by Allstate Petroleum Inc. in three Louisiana mineral leases known as the El Dorado Nicholson and Buehler leases. Named as solidary defendants are Allstate Petroleum, Inc., Milton J. Helmke, its president; Joseph Messina, its secretary; and Henry L. Hahn, Jr., who was employed by the corporation as general manager. The petition charges that the corporation and the three individual defendants "acted jointly and in concert" and "conspired" to make certain representations to him as an inducement to purchase the fractional interest; that the representations were false and fraudulent; and that as a result of his reliance upon such representations he suffered the loss of his investment. Following trial on the merits judgment was rendered in plaintiff's favor and against all defendants in solido in the sum of $2,000.00 together with legal interest thereon from September 17, 1962, until paid, and for costs. Defendants Helmke and Hahn appealed suspensively. Defendants Allstate Petroleum, Inc. and Messina appealed devolutively. The corporation's appeal has been abandoned, the corporation's indebtedness being acknowledged in appellants' brief and reversal of the judgment being prayed for therein only insofar as it holds the three individuals liable.
Plaintiff's petition charges that the following representations were made to him by the defendants acting jointly and in concert:
1) That the corporation owned an undivided 4/5ths of the working interest in the leases.
2) That all funds received from the sale of fractional interests in the corporation's lease holdings would be deposited in escrow in a New York bank, said funds not to be withdrawn except to pay the expense of drilling an oil well on each of said leases, the said wells to be commenced no later than September 17, 1962.
3) That in the event defendants were unable through the sale of fractional interests to obtain sufficient funds to finance the drilling of such wells, the amount paid in by plaintiff would be returned to him.
The petition further alleges in substance that all of such representations were false and fraudulent to the knowledge of each of the defendants, all of whom acted jointly and in concert to perpetrate a fraud on petitioner by failing to live up to their agreement with him and by failing properly to use the funds which he advanced.
The record leaves no doubt that the representations, as alleged, were made to plaintiff; that the representations were made as to all three leases; and that plaintiff relied thereon and was induced thereby to invest $2,000.00 for a 1/256 interest in the three leases. The record also reveals that instead of the proceeds of the sale of lease interests being deposited in an escrow account, as it was represented they would be, all of such proceeds, including the $2,000.00 invested by plaintiff, were deposited in an ordinary checking account in the name of Allstate Petroleum, Inc., from which account funds could be withdrawn at will by Mr. Hahn, as agent of the corporation on his sole signature. Nor were any of the sales proceeds kept intact pending cumulation of sufficient funds to drill the wells but were withdrawn by Hahn as fast as collected and used to pay sales commissions, office expenses, and all manner of *817 other expenses which the corporation, and not the investors, was obligated to pay as its contribution toward the project. Sufficient interests to realize the necessary funds for drilling were never sold. No wells were ever drilled. The corporation's promotional project was discontinued after complaints were made to the Securities and Exchange Commission; the corporation closed its offices and moved out; and plaintiff's funds, instead of being available for reimbursement to him had been spent for purposes other than that for which they had been given. The corporation, through Mr. Hahn, had withdrawn and used for ordinary corporate expenses all of the funds collected from investors.
In his written "Reasons for Judgment" the Trial Judge found that a fraud had been perpetrated on plaintiff, and that the three individual defendants participated in the fraud.
Defendants contend that none of the representations made to plaintiff related to a present or existing fact, and that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events (citing Swann v. Magouirk, La.App., 157 So.2d 749, which quotes extensively from annotations in 51 A.L.R. 59 and 91 A. L.R. 1296; Farwell v. Milliken and Farwell, Inc., La.App., 145 So.2d 644; Orr v. Walker, La.App., 113 So.2d 485; Green v. Louisiana Highway Commission, La.App., 3 So.2d 236; Brenard Manufacturing Company v. Gibbs, 9 La.App. 137, 119 So. 483 and Brinker v. Feist, 14 La.App. 101, 129 So. 416.)
The three individual defendants further contend that since the representations, relating as they do to future events, cannot serve as a basis for a finding of fraud, plaintiff is relegated to a claim against the corporation only, since in the absence of fraud an officer or agent acting on behalf of a corporation within the scope of his express or implied authority will not incur personal liability for the obligations of the corporation (citing Orleans Shoring Company v. DeVillentroy, La.App., 92 So.2d 274; La Parie v. Totora, La.App., 62 So.2d 658; and Air Waves v. Link, La.App., 89 So.2d 422.)
Defendants overlook the fact that the general rule regarding fraud as stated in Swann v. Magouirk and other cases cited by them supra is subject to exceptions, one of them being stated in the annotation in 51 A.L.R. at page 63 as follows:
"The weight of authority holds that fraud may be predicated on promises made with an intention not to perform the same, or, as the rule is frequently expressed, on promises made without an intention of performance." See also 91 A.L.R. at page 1297 et seq.
In 23 Am.Jur. 798 et seq. the exception is stated in the following language:
"* * * According to the weight of authority, if the person making the statement as to a future event is guilty of an actual fraudulent intent, and makes the misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representation. This result is reached frequently on the theory that a person's intention or belief is a matter of fact and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. * * *
* * * * * *
"Where a promisor has no intention of performing his promise when it is made, in the view taken by a majority of courts, a fraud has been committed by deliberate deception and false pretense. Such cases rest upon an entirely different basis for the predication of fraud from that which would be possible in cases of promises honestly made, but subsequently unfulfilled."
*818 See also 37 C.J.S. Fraud § 11, p. 234 et seq.; Johnson v. Mansfield Hardwood Lumber Company, 159 F.Supp. 104 (D.C.La.) affirmed 263 F.2d 748 (5th Circuit), rehearing denied 268 F.2d 317.
The facts of this case, in our opinion, place it squarely within the exception to the general rule, for we find that there never was any intention, at least on the part of defendant, Hahn, to escrow any of the funds received from the sale of interests and never any intention to hold such funds intact for the payment of the expense of drilling wells, and never any intention to return such funds to the investors in the event sufficient money to drill the wells could not be obtained.
We agree with the Trial Judge that a fraud was perpetrated on plaintiff. The fraud in our opinion consisted in the misuse of the funds and we entertain no doubt as to defendant Hahn's guilt in this respect.
It now becomes necessary to consider whether Helmke and Messina were implicated in the fraud.
Helmke, a resident of New Orleans, became the president of Allstate Petroleum, Inc., at the request of Hahn, the promoter and organizer of the corporation, sometime in the early summer of 1962, and Messina, also a resident of New Orleans, became its secretary. Helmke gave Hahn $5,000.00 "to go up to New York and do some missionary work in New York to try to get the thing started off, corporation, you see, Allstate Petroleum Inc." Hahn, who acted as general manager of the corporation, went to New York and shortly thereafter prepared a prospectus to be filed with the Securities and Exchange Commission in connection with the El Dorado lease. This prospectus was signed by Helmke as president of the corporation and by Messina, as its secretary. Hahn also prepared two brochures to be used in connection with the corporation's sale of lease interests. One of these brochures referred to the Nicholson lease and the other to the Beuhler lease. At Hahn's request Helmke obtained a letter from his banker certifying to his (Helmke's) credit standing, which letter was reproduced in the two brochures. Hahn, who remained in New York, hired two salesmen, Dunkley and Shane, to conduct the corporation's sales campaign under his direction.
In the latter part of June 1962, plaintiff was approached by Dunkley and Shane and, after having studied the prospectus and the two brochures, plaintiff was induced by the salesmen to invest in the corporation's fractional lease interests on their assurance that all of the representations made in the El Dorado lease prospectus applied equally to the Nicholson and Beuhler leases and that all of the funds realized from the sale of interests in such leases would be placed in escrow and used solely for the payment of drilling expenses. They further represented that plaintiff's investment would be returned to him promptly in the event sufficient drilling funds could not be obtained in time for drilling which was scheduled to commence on September 17, 1962. Upon being contacted by plaintiff, Hahn confirmed the representations made by the salesmen. In spite of the representations none of the funds collected from plaintiffs and other investors was placed in escrow but instead such funds were deposited by Hahn in a checking account in the name of the corporation from which withdrawals could be, and were, made at will by Hahn on his sole signature. The first thing that Hahn did upon depositing the proceeds of a sale was to withdraw from this account an amount equal to 20% of the sales price for the payment of sales commissions. Thereafter he drew on the account at will for payment of various and sundry corporate expenses until all of the funds were dissipated. Sometime in August 1962, the Securities and Exchange Commission stopped the sale of lease interests on account of the unsavory reputation of Dunkley and Shane. There then existed no funds from which plaintiff and other investors could be reimbursed.
*819 In our opinion the fraud in this case consists in the misuse of the funds by Hahn, and there is no evidence in the record which connects either Helmke or Messina with such misuse. There is no evidence which tends to prove that either of them had any reason to suspect that the funds would not be handled by Hahn in accordance with representations in the prospectus.[1] There is no evidence to establish that either of them participated in any of the withdrawals from the New York bank. There is no evidence that they received any of the funds so drawn. There is no evidence that either of them even knew that Hahn had withdrawn funds from the New York account until after the operation was shut down by the Securities and Exchange Commission. The efforts of Helmke and Messina thereafter to settle plaintiff's claim amicably do not in our opinion evidence any guilt on their part.
In rendering judgment against Helmke and Messina the Trial Court in effect imputed Hahn's actions to them solely because they were officers of the corporation, and because, as to Helmke, the brochures contained a letter of recommendation as to his financial standing by the president of his bank.
The most the evidence could be held to show is that Helmke and Messina were negligent in their conduct of the business and affairs of the corporation by leaving Hahn in charge and by failing to take more stringent steps to assure that no funds could be withdrawn from the New York bank account. But negligence does not constitute fraud.
The Trial Judge was of the opinion that the holding in Reardon v. Dickinson, 156 La. 556, 100 So. 715, is squarely applicable to this case. It must be confessed that some of the facts in this case are strikingly similar to the facts as disclosed in Reardon. However both turn on issues of fact and not of law, and the essential issue in this case is whether Helmke or Messina or either of them had any knowledge of the manner in which Hahn was handling the funds.
In Sanders v. Sanders, 222 La. 233, 62 So.2d 284, the Supreme Court stated:
"In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced * * * It has also been said that evidence showing that fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the more preponderance of the evidence * * *"
In our opinion the facts as disclosed in the present case do not warrant a holding of fraud on the part of either Helmke or Messina.
Defendants contend that the Trial Court erred in assessing interest on plaintiff's claim from September 17, 1962, the date it found that plaintiff's investment was due to be returned to him. Defendants contend that interest should be allowed only from date of judicial demand on the theory that this is an action for damages ex delicto, citing LSA-R.S. 13:4203. We are of the opinion however, that this is an action for breach of an agreement to return plaintiff's investment under certain contingencies.
For the foregoing reasons the judgment appealed from is reversed insofar as it holds Milton J. Helmke and Joseph Messina liable, *820 and judgment is now rendered in favor of the defendants Milton J. Helmke and Joseph Messina and each of them and against the plaintiff, Dr. George Polusky, dismissing said plaintiff's demands as to them at his costs. In all other respects the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellee.
Reversed and rendered in part; affirmed in part.
NOTES
[1] In this connection we observe that the representations made by Dunkley and Shane, confirmed by Hahn, in some respects go further than those contained in the prospectus signed by Helmke and Messina, and there is no evidence to show that either of them had any knowledge of such representations.