433 So.2d 766 (1983)
AUTOMATIC COIN ENTERPRISES, INC.
v.
VEND-TRONICS, INC., George J. Karney and Gene Chute.
No. 82-CA-243.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
Rehearing Denied July 15, 1983.
Thomas L. Giraud, Giraud, Cusimano & Verderame, New Orleans, for plaintiff/appellant.
*767 Stanley H. Levin, Goldman & Levin, New Orleans, for defendant/appellee.
Before BOUTALL, KLIEBERT and BOWES, JJ.
BOWES, Judge.
Plaintiff appeals a declarative judgment of the trial court dismissing defendants, George Karney and Gene Chute, from the action before the court. We affirm.
Automatic Coin Enterprises, Inc., filed suit against Vend-Tronics, Incorporated, George J. Karney, its general manager, and Gene Chute its president, alleging:
1. That the computer system sold to plaintiff was incapable of providing the services for which it was purchased;
2. That the individual defendants, as representatives of the corporate defendant, knew before they ever approached plaintiff that not all of the software necessary for the computer system had been commercially developed by the corporate defendant;
3. That one software program which was delivered to plaintiff never had been tested for accuracy;
4. That the individual defendants "knowingly, willfully and falsely represented to plaintiff that the ... system and hardware were adequate for its present and future needs."
During the latter part of 1978, in response to an inquiry by the plaintiff, defendants Gene Chute, President, and George Karney, General Manager, of Vend Tronics, visited the offices of Automatic Coin in order to present a proposal on a Vend-Tronics Computer System. Following this meeting, a proposal was submitted by Vend-Tronics and accepted by Automatic Coin. The computer system arrived and was set up at Automatic Coin's place of business in April 1979. Plaintiff claims that the system never worked and that defendants Chute and Karney fraudulently misrepresented the capabilities of the system.
Without a doubt, in Louisiana, a party can recover when that party has suffered a loss due to intentional fraudulent misrepresentation(s). Bunkie Bank & Trust Co. v. Johnston, 385 So.2d 1264, (La.App. 3rd Cir.1980); Wilder v. Wilder, 263 So.2d 730 (La.App. 1st Cir.1972); Swann v. Magouirk, 157 So.2d 749, (La.App. 2nd Cir.1963). However in the absence of fraud, malfeasance, or other wrongdoing the officer(s) of a corporation are not personally liable for the acts of the corporation. Ardoin v. Robinson, 129 So.2d 105 (La.App. 2nd Cir.1961); Air Waves Inc. v. Link, 89 So.2d 422 (La. App. 1st Cir.1956).
Ergo, for plaintiff to recover against defendants, George Karney and Gene Chute, plaintiff must prove that the defendants perpetrated fraud. In Hall v. Arkansas Louisiana Gas Co., 368 So.2d 984 (La.1979), Rehearing Denied, our Supreme Court made the following statements:
Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. La.Civil Code art. 1847. Two elements are essential to constitute legal fraud: the intention to defraud and loss or damage or a strong probability of loss or damage. Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953). It is well settled that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish fraud exceptionally strong proof must be adduced. Buxton v. McKendrick, supra; Sander v. Sanders, 222 La. 233, 62 So.2d 284 (1952).
In reaching its decision, the trial court determined that there was no evidence that defendants Karney or Chute had been guilty of fraud as alleged by plaintiff and that neither had personally or individually breached any duty owed to plaintiff.
The jurisprudence is clear that fraud cannot be imputed from alleged misrepresentation(s) alone but, rather, must be based solely on a person's intent not to *768 perform. The general rule is that an action for fraud cannot be asserted based upon statements promissory in nature and relating to future actions. Neither can fraud be predicated upon the mere failure to perform a promise, nor is nonperformance of an agreement to do something at a future time alone evidence of fraud.
... a mere promise to perform an act in the future is not, in the legal sense, a representation and a failure to perform it does not change its character. Moreover, a representation that something will be done in the future or a promise to do it from its nature, cannot be true or false at the time when it is made. A failure to make it good is merely a breach of contract which must be enforced by an action on the contract, if at all. And as in the case of promises, it is generally held that mere assertions on intentions or declarations of future purpose do not amount to fraud. [citations omitted] Colorado Milling and Elevator Co. v. Rapides Grocery Co., 142 So. 626 (La.App. 2d Cir.1932)
However, fraud also may be predicated on promises made with the intention not to perform at the time the promise is made. It has been held that promises made without any intention of performance constitute a misrepresentation of a present rather than a future fact. Polusky v. Allstate Petroleum, Inc., 180 So.2d 815 (La.App. 4th Cir.1965). In Polusky, supra, the Court quoted the following language from 23 Am.Jr. 798:
Where a promisor has no intention of performing his promise when it is made, in the view taken by a majority of courts, a fraud has been committed by deliberate deception and false pretense. Such cases rest upon an entirely different basis for the predication of fraud from that which would be possible in cases of promises honestly made, but subsequently unfulfilled.
The allegation of fraud by a plaintiff is nothing more than a conclusion reached by him. Although the equipment most assuredly did not function satisfactorily, an examination of all the pleadings, evidence and testimony, even in a light most favorable to the plaintiff, fails to convince this court that the defendants intended to or did defraud the plaintiff. The defendants certainly could and should have put forth a much stronger effort to make the equipment function properly. However, the testimony clearly establishes that Vend-Tronics Inc. and Messrs. Karney and Chute made reasonable efforts to satisfy the complaints of the plaintiff. The record reveals that the defendants were available by phone to answer questions or otherwise help solve problems in connection with the equipment, that many long distance telephone conversations were had, and further, that they dispatched employees of the defendant corporation to Metairie to try to correct the reported problems.
Even after suit was filed by Automatic Coin, the president of Vend-Tronics continued to submit proposals to the plaintiff in what appears to be good faith attempts to live up to their contract and in an effort to compromise. A letter[1] dated January 22, *769 1982, from defendants' counsel to plaintiff's attorney, evidences the good faith exhibited by Vend-Tronics and demonstrates the lengths to which defendants were willing to go in order to try to appease the plaintiff.
While appellant's argument is probably the strongest one available, is well written and researched, and a good analysis of agency law, it does not overcome the fact that plaintiff was unable to carry its heavy burden of proof to show fraud on the part of defendants Karney and Chute.
Accordingly, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] After several telephone conferences with the president of Vend-Tronics, and extensive investigation by him, I have been authorized to submit the following proposal as a means of compromising the above-captioned suit.

To provide Automatic Coin with the features stated in the Victor License Agreement, signed by our clients in January, 1979, a copy of which is attached as Exhibit D-4 to defendants' Answer to Plaintiff's First Set of Interrogatories, Vend-Tronics would:
implement systems II in the present computer by installing, at no cost to Automatic Coin, a transmission board; this system does not use a lot of core space, and would give Automatic Coin the ability to do all its printing, file maintenance and input on its machine, using the computer of Vend-Tronics once or twice a week. The Vend-Tronics personnel would spend approximately one week on site here in New Orleans, over a 2-month period. The usual charge for this service is $500.00 per month; Automatic Coin would be given a one-year's contract at approximately $100 per month.
Automatic Coin had been interested in a bookkeeping system, the price of which was quoted at $8,000. This system never was ordered. If the above proposal is accepted, Vend-Tronics would provide the AIMS bookkeeping system for not more than one-half of the price quoted above. This system is now on a smaller computer, so it would take 3-4 months to move it up to the size hardware sold to Automatic Coin.
My client is fairly confident that there is enough disk space to accommodate both programs.
Please review these proposals with your client, and let me know whether we should pursue the matter further, possibly by direct contact between our respective clients.