954 So.2d 316 (2007)
Gary L. DeMOSS, et ux., and Miss Crain School of Dance, Inc., Plaintiffs-Appellants
v.
PINE HILLS GOLF AND COUNTRY CLUB, INC., Defendant-Appellee.
No. 42,033-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
*317 Sedric E. Banks, Monroe, for Appellants.
Crawford & Joyce, by Brian E. Crawford, Jefferson B. Joyce, Monroe, for Appellee.
Before CARAWAY, LOLLEY & SEXTON (Pro Tempore), JJ.
SEXTON, J.
This case arises out of the sale of real estate in Ouachita Parish. The purchasers, Plaintiffs Gary and Sherry DeMoss and Missy Crain School of Dance, Inc., owned and operated by Gene and Missy Crain, purchased property from Pine Hills Golf and Country Club, owned and operated by John Smith ("Smith"). Five years after the sale, Plaintiffs discovered that the deed conveyed only one of two lots comprising the subject property ("Lot 1" and "Lot 2"). Plaintiffs had been consistently using and improving both lots since the sale. Mr. Smith, however, asserted ownership of Lot 2 and Plaintiffs filed suit to have the deed reformed, sale rescinded and/or for damages. Mr. Smith filed a motion for summary judgment, which was granted. Plaintiffs appeal. For the reasons set forth herein, we reverse the judgment of the trial court and remand for further proceedings.

FACTS
Mr. Smith owns and operates Pine Hills Golf and Country Club in West Monroe. He developed a residential subdivision adjacent to the country club and owned two commercial lots (Lots 1 and 2) on Hwy 80 at the entrance to the country club. For years, a restaurant had been located on Lot 1, with a parking lot on Lot 2. The restaurant was abandoned in 2000 and the building was in disrepair when Mr. Smith decided to sell the property. He put a sign up and advertised the property for sale. It is disputed whether both lots were "for sale" or just Lot 1, where the building was located. Plaintiffs submit that the parcel (Lots 1 and 2 together) appears to be one lot and was advertised for sale and represented by Mr. Smith as one lot. Mr. Smith maintains that only Lot 1 was for sale and that he never advertised or represented that Lot 2 was for sale or was part of the sale to Plaintiffs.
The DeMosses and Crains were interested in the property for two separate family-owned businesses, a dance wear business, owned and operated by the DeMosses, and a dance studio, owned and operated by the Crains. Mr. DeMoss and Mr. Crain looked at the property on their own and then Mr. DeMoss telephoned Mr. Smith to inquire about the property. Shortly thereafter, the DeMosses and Mr. Crain met Mr. Smith at the property to inspect it. It is disputed how long the parties were on the property and what was discussed. The asking price was $125,000. It is also disputed when and how the sales price of $115,000 was agreed upon. In any event, the parties reached a verbal agreement and proceeded to closing.
Allegedly at the urging of Mr. Smith and to minimize expenses, Plaintiffs elected to use Mr. Smith's legal counsel and not seek representation for the sale. They did not have the property surveyed, nor did they examine the title. Plaintiffs signed the deed at closing and paid cash for the property so there was no mortgagor to require a title examination. A significant *318 dispute in this case concerns the motivation for Plaintiffs to dispense with seeking their own legal counsel, a survey and title examination. Plaintiffs argue, and testified in deposition, that Mr. Smith encouraged them to forgo such safeguards and rely on his counsel for all details of closing in order to save expenses. Mr. Smith fervently denies that he made any such comments to Plaintiffs. In any event, the sale was closed and Plaintiffs began restoring the building. As previously stated, they operated the business for the next five years, openly using and improving both lots.
It is also disputed how Plaintiffs became aware of the fact that the deed did not convey both lots to them. According to Plaintiffs, in April 2006, an employee of Mr. Smith called Sherry DeMoss and told her that Mr. Smith had mistakenly received the tax notice for Lot 2. This created confusion as to who had been paying the property taxes for that lot and led to Plaintiffs' discovery that the legal description on the deed covered only Lot 1, where the building was located, and not Lot 2, the parking lot. At this point, according to Plaintiffs, Mr. Smith asserted ownership of Lot 2. Mr. Smith, on the other hand, testified in deposition that he never intended to sell Lot 2 and, several months before suit was filed, he drove past the property and noticed a sign located on Lot 2. He states that he telephoned Plaintiffs' business and informed a woman that the sign was on his property and must be removed.
As previously stated, Plaintiffs filed suit and Mr. Smith filed a motion for summary judgment. Depositions of all parties were taken and submitted. Apparently, a hearing was held on the motion, but the record indicates that neither party requested that the proceedings be transcribed. The trial court granted the motion for summary judgment and, in its reasons for judgment, explained its ruling as follows:
The court's decision was based in (sic) determination of whether evidence was to be strong and convincing, which required the trial court to make credibility determinations and to weigh evidence. In this case the court felt it was simply a mistake of plaintiff for not doing the things mentioned above, as securing their own attorney, getting a survey and determining the value of the lots. Defendant was asking $125,000 and the plaintiffs (sic) offer was for $115,000 and that's what the sale was for.
The court was not convinced there was any fraud, because a contract was formed by the consent of the parties. Fraud does not vitiate consent when the party that the fraud was directed (sic) could have ascertained the truth without difficulty, inconvenience or special skill.

DISCUSSION
The standard of review for the grant or denial of a motion for summary judgment is de novo. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002. Appellate courts review summary judgments de novo under the same criteria that govern a trial court's consideration of whether or not a summary judgment is appropriate-(1) whether there exists a genuine issue of material fact and (2) whether or not the mover is entitled to judgment as a matter of law. Id. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A genuine issue is a triable issue on which reasonable persons could disagree. Jones, *319 supra, citing Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Further, a fact is material when "its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Jones, supra, quoting Smith, supra.
In a motion for summary judgment, the burden of proof is on the movant. La. C.C.P. art. 966(C)(2). The movant's burden does not require him to negate all essential elements of the adverse party's claim; but, rather, the burden on the movant at summary judgment is to demonstrate an absence of factual support for one or more elements essential to the adverse party's claim. Then, if the nonmovant fails to produce sufficient factual support to show he can meet his evidentiary burden at trial, there is no genuine issue of material fact. Id.
Plaintiffs seek reformation of the deed, reflecting Lot 2 as part of the property transferred. An action to reform a written instrument is an equitable remedy, lying only to correct mistakes or errors in the written instrument when such instrument, as written, does not express the true agreement of the parties. Fontenot v. Lewis, 215 So.2d 161 (La.App. 3d Cir. 1968).[1] The burden of proof rests on the party seeking reformation to establish mutual error by clear and convincing evidence and parol evidence is admissible. Id.
Plaintiffs further allege fraud on the part of Mr. Smith and seek relief under La. C.C. art. 1953, et seq., arguing that Mr. Smith's silence and/or misrepresentations caused them to consent to a sale that they otherwise would not have. Specifically, La. C.C. art. 1954 provides:
Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.
This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations.
Not surprisingly, Mr. Smith emphasizes the first paragraph of article 1954, arguing that Plaintiffs had access to the public records and could have easily ascertained the property described in the deed and that there were actually two lots rather than just one. On the other hand, Plaintiffs point to the second paragraph of the article which allows a cause of action in fraud, even where the complainant could have easily ascertained the truth, if a "relation of confidence has reasonably induced" the reliance of the complaining party.
Plaintiffs also cite La. C.C. art. 1948, et seq., complaining that Mr. Smith's misrepresentations vitiate their consent to the sale. Consent may be vitiated by error, fraud or duress. La. C.C. art. 1948. Relief is available where the error concerns a cause without which the obligation would not have been incurred and that cause was or should have been known to the other party. La. C.C. art. 1949. Plaintiffs state that they would never have purchased only Lot 1, as Lot 2 was integral to the operation of the restaurant.
Factually, Plaintiffs contend that, when Mr. Smith met them on the property, they specifically told him that parking was a huge factor in their minds and he was well aware that parking was an important factor in their decision to purchase the property, *320 as was the service entrance accessed on Lot 2.
Mr. DeMoss testified in deposition that the boundaries of the property were specifically discussed and included both lots. Mr. and Mrs. DeMoss testified that, at the inspection, the group was standing in the parking lot on Lot 2 and Mr. Smith clearly indicated that the parking lot was part of the property that would be "theirs." According to Plaintiffs' testimony, Mr. Smith pointed out the general boundary lines as the edges of the parking lot (Lot 2), the fence line along the back of the property and the highway frontage. Further, Mr. DeMoss testified that Mr. Smith represented to them that the parking lot was sufficient for 60-70 restaurant patrons, indicating his awareness that they were interested in purchasing both lots. Finally, Plaintiffs note, and Mr. Smith admitted, that he drove by the property frequently and had observed their continued and uninterrupted use and improvement of both lots for five years, never asserting ownership of, or asking for rent for, Lot 2.
In addition, Plaintiffs presented testimony that Mr. Smith led them to believe that they did not need legal counsel, as his attorney had worked for him for years, was familiar with the property and could "take care of everything." Plaintiffs assert that they trusted Mr. Smith that the documents would accurately reflect the agreed-upon sale and property. Moreover, they trusted Mr. Smith's representation of the visible property lines during the physical inspection of the property. There is some differing testimony among Plaintiffs as to each individual's belief on whether Mr. Smith knew at the time of the sale that he was tricking them by only selling Lot 1 or if it was an "honest mistake" at the time of the sale that, when discovered by Mr. Smith, led him to assert ownership of Lot 2. Plaintiffs may be entitled to relief under either scenario, one via the theory of fraud and the other by virtue of mutual mistake justifying reformation of the deed. See Fontenot v. Lewis, supra.
Mr. Smith testified that he did not make reference to Lot 2 during any conversation with Plaintiffs. He denies pointing out boundary lines and could not recall any specifics of the conversations that took place at the site. He further denies advising Plaintiffs not to seek independent legal counsel and testified that he never spoke to Plaintiffs about legal counsel, the legal description of the property or anything related to closing the sale.
Mr. Smith acknowledges that there are disputed facts in this case, but claims they are not material. Mr. Smith characterizes the above described differences in the testimony as "minor discrepancies," "minor inconsistencies" and "differences in minor points of testimony" that should not preclude summary judgment. We disagree. Our de novo review of the deposition testimony in this case reveals factual disputes central to the determination of whether the deed as written does not express the true intent of the parties or whether there were actionable misrepresentations on the part of Mr. Smith. We express no opinion on the merits of these potential claims. Rather, we simply hold that there are material issues of fact created in the differing testimony that are more appropriately decided by a trier of fact than on summary judgment.
Plaintiffs emphasize that the trial court's reasons for judgment expressly state that it made credibility determinations and weighed the evidence, which is inappropriate on summary judgment. On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. Sharp v. Parkview Care Center, Inc., 41,341 (La.App. 2d Cir.9/27/06), 940 So.2d *321 724, citing Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. While we are cognizant that our review is from the judgment, not the reasons for judgment, we agree with Plaintiffs that credibility calls and the weighing of evidence is essential for resolution of this suit. Furthermore, the determination of whether the evidence is strong or convincing is one which requires the trial court to make credibility determinations and to weigh evidence, both of which are inappropriate in a summary judgment proceeding. Britton v. Williams, 40,341 (La.App. 2d Cir.10/26/05), 914 So.2d 1151. Accordingly, we conclude that summary judgment was improper in this case.

DECREE
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Pine Hills Golf and Country Club, Inc., is reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed to Pine Hills Golf and Country Club, Inc.
REVERSED AND REMANDED.
NOTES
[1] In Lewis, the court of appeal reversed the trial court's grant of summary judgment where material issues of fact existed as to whether the parties intended a sale of real property to include a certain amount of acreage that was not reflected in the deed.