STEWART, J.
hThe plaintiffs, Larry Taylor and TSC, Inc., (hereafter “TSC”), sued the defendants, Dowling, Gosslee & Associates, James S. Dowling, and West Viking Drive, L.L.C. (hereafter “WVD”) for damages and rescission of a sale of land from TSC to WVD. Taylor’s claims were dismissed on an exception of no right of action, and TSC’s claims were dismissed on summary judgment. The plaintiffs now appeal the dismissal of their claims and other rulings by the trial court on an exception of prescription and a motion in limine. For the reasons explained in this opinion, we affirm.
FACTS
This matter arises from a sale by TSC of 9.5 acres of land located in Bossier Parish to WVD on October 23, 2001. TSC is a corporation wholly owned by Taylor. WVD is a shell company used to purchase property for Builder’s Supply, a concrete production business owned by Grady Golden and Carleton Golden. WVD was represented in negotiating the purchase by James S. Dowling (hereafter “Dowling”), a manager of WVD and a principal in the real estate firm Dowling, Gosslee & Associates.
In the early part of 2001, WVD acquired a piece of property referred to in the record as the “Adger tract” located between Benton Road and the Red River. Taylor and TSC owned the land to the north and the west of the Adger tract. Seeking land adjacent to the Adger tract and additional frontage on the river, WVD through Dowling approached Taylor and began negotiations.
On February 22, 2001, WVD proposed a buy-sell agreement for the purchase of 24 acres of TSC’s property. This agreement included |2conditions requiring disclosure prior to closing of the buyer’s identity, the intended use of the property, and the likely vehicular traffic. The parties did not execute this agreement. WVD and TSC did execute a second buy-sell agreement dated March 13, 2001, for the proposed sale of the same acreage for a price of $240,000. This second agreement included a screening provision requiring the buyer to notify the adjacent landowner of its plans once it begins development and, upon request, to plant trees or bushes along the boundary. Due to TSC’s failure to clear title issues, WVD canceled the agreement.
The parties executed a third buy-sell agreement on July 26, 2001, for the sale of approximately 9.5 acres owned by TSC north of the Adger tract. This agreement did not provide for disclosure of the true buyer and did not include a screening provision.
Notably, all three buy-sell agreements included the following provision, referred *250 to as a merger and integration clause, which states:
6. Entire Agreement: This Contract, including all exhibits and amendments attached hereto, if any, constitutes the entire understanding and agreement between Buyer and Seller and supersedes all prior and contemporaneous agreements, understandings, negotiations, offers, promises and discussions, whether oral or written. There are no warranties, representations or agreements between Buyer and Seller in connection with this Contract or transaction contemplated herein, except as set forth herein.
The sale closed on October 23, 2001, when the cash sale deed for a price of $112,160.40 was executed by Dowling on behalf of WVD and by Taylor as president of TSC.
|3In February 2002, Taylor filed an application with the Bossier City-Parish Metropolitan Planning Commission (“MPC”) to rezone 65 acres of land owned by him and TSC for the purpose of developing a residential subdivision. Most of the property that was the subject of the application was zoned 1-2 for heavy industrial uses. The property sold by TSC to WVD was also zoned 1-2. WVD through Dowling opposed the rezoning along with Builder’s Supply and other businesses operating in the area. Both the MPC and the Bossier Parish Policy Jury rejected the request to rezone the 1-2 property. The denial was upheld by this court in TSC, Inc. v. Bossier Parish Police Jury, 38,717 (La.App. 2d Cir.7/14/04), 878 So.2d 880, writ denied, 2004-2317 (La.11/19/04), 888 So.2d 203.
On March 17, 2003, TSC and Taylor filed suit against WVD, Dowling, and Dowling, Gosslee & Associates seeking rescission of the sale and damages.[1] They alleged that during negotiations Dowling was made aware of the plans to develop the rest of the TSC and Taylor properties for residential and commercial purposes and that he made the following misrepresentations:
1. Knowing that Builder’s Supply intended to use the property as another location for its business, Dowling represented that the undisclosed purchaser wanted the property “solely for investment purposes” and had no immediate plans for development that would interfere with the petitioner’s development plans.
2. Dowling represented that he was interested in either becoming a partner in plaintiffs’ residential development or marketing the development through his firm, Dowling, Gosslee & Associates.
|43. Dowling stated on several occasions that the parties needed to hurry and close the sale so that they could move forward with the residential development plans.
The petition further alleges that after making these representations, Dowling and WVD opposed the rezoning application, effectively blocking the plaintiffs’ planned residential development and causing damages.[2]
*251 The defendants’ answers denied the allegations of the petition, and WVD specifically alleged no right of action by Taylor. On May 16, 2006, WVD filed a motion for summary judgment and an exception of prescription as to the claims asserted by the plaintiffs. Both were denied by the trial court.
In February 2006, petitioners filed an amended and restated petition alleging that Carleton Golden had conducted an unauthorized credit check on Taylor in violation of federal law and that as chairman of the Greater Bossier Parish Economic Foundation, Golden caused a letter opposing rezoning to be sent to the Bossier Parish Police Jury.
WVD filed two motions in limine regarding the new allegations. The first was to exclude evidence of actions alleged to have been taken by defendants after the sale to frustrate the rezoning of Taylor’s and TSC’s properties. The trial court denied the motion.
WVD’s second motion in limine along with an exception of prescription were filed in response to the credit check allegations. The trial | r,court granted this motion and exception. It determined that any cause of action based on the credit check would have prescribed and that the highly prejudicial nature of the evidence outweighed any probative value it might have in proving the allegations of fraudulent inducement of the sale.
Dowling and WVD also filed exceptions of no right of action as to Taylor. They argued that he was not a party to the sale between TSC and WVD and that he had no individual right of action to recover for acts damaging to the corporation. The trial court granted the exception, dismissing the Taylor’s claims.
Dowling and WVD then filed motions for summary judgment on TSC’s claims. They argued that the merger and integration provision in the buy-sell agreement precluded the introduction of parol evidence of any oral promises or agreements made in connection with the sale. They also argued that the alleged representations by Dowling cannot be considered fraud as they were promissory in nature and related to future use of the property. In response, TSC argued that the trial court had already rejected the same arguments in the first summary judgment and that proof of fraud would depend upon intent, which is a subjective fact that is not appropriate for consideration on summary judgment.
Rejecting TSC’s arguments, the trial court granted the motions for summary judgment and dismissed TSC’s claims. The trial court found that the merger and integration clause in the three buy-sell agreements had been reviewed by Taylor and his attorney no less than three times. Concluding that the alleged misrepresentations by Dowling did not amount to fraud, the Rtrial court described them as “vague conversations” and “vague promises” about development at some point in the future. Noting that other landowners had objected to the proposed zoning change, the trial court rejected the contention that the defendants’ opposition caused the damages alleged in the pleadings.
A final judgment dismissing TSC’s claims was rendered on February 11, 2009, and this appeal by TSC and Larry Taylor ensued. This opinion will address the assignments of error in the order in which the rulings complained of were rendered.
DISCUSSION

Motions in Limine and Exception of Prescription

Plaintiffs appeal the trial court’s “OPINION/ORDER” rendered on October 16, *252 2008, which denied WVD’s first motion in limine, but granted WVD’s second motion in limine and exception of prescription.
Although the ruling on the first motion in limine was in plaintiffs’ favor, they complain of the following “clarification” included in the reasoning and referring to the previous denial of an exception of prescription filed by WVD in 2006. The language at issue states:
If the court was inartful in its decision or ambiguous so as to cause confusion in the minds of the attorneys of record, the court will use this ruling as clarification. This case arises out of plaintiffs’ allegations that [the defendants] fraudulently or by misrepresentation induced plaintiffs to enter a contract. Plaintiffs are seeking rescission of the sale which occurred on October 23, 2001. This court expressly accepted plaintiffs’ argument that this is a suit in contract and, as such, had not prescribed. On further review of the record and transcript, be advised the “key” date would be March 12, 2002. Mr. Taylor maintains that he had no knowledge that West Viking Drive was opposed to the rezoning; however, if the evidence establishes that Mr. Golden expressed his opposition to the rezoning 17and the court is satisfied the defendant has met its burden of proof, then the court will entertain the appropriate motion as it relates to the tort action.
The trial court’s denial of WVD’s 2006 exception of prescription was based on a finding that plaintiffs were seeking rescission of the sale and related damages and that the applicable prescriptive period was five years under La. C.C. art. 2032.[3] The trial court did not find that a tort claim had been asserted and did not make a ruling as to whether any tort claim had prescribed. The trial court’s “clarification” is not a reversal of its earlier ruling in plaintiffs’ favor on the 2006 exception of prescription. Appeals are taken from judgments, not the reasons for judgment. Greater New Orleans Expressway Com’n v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22. The “clarification” is not a judgment and is not appealable. We find no merit to this assignment of error.
Next, plaintiffs argue that the trial court erred in granting a motion in limine excluding evidence regarding the credit check on Larry Taylor obtained by Carle-ton Golden in September 2000. Plaintiffs argue that this evidence is relevant as part of the res gestae of the alleged fraudulent conduct and that the credit check was made to obtain some unfair advantage in advance of negotiating the purchase of TSC’s land. Also, plaintiffs assert that the trial court erred in finding that the credit check as a cause of action had prescribed.
The plaintiffs’ supplemental/amended petition alleged that the credit check by Golden was “in violation of federal law and permitted defendants Rto improperly obtain financial information ... which they utilized to [Taylor’s] detriment in connection with their negotiations.” The pleading does not allege any specific damages pertaining to the credit check. Plaintiffs asserted before the trial court and in their appellant brief that they are not alleging a cause of action under federal law. Our reading of plaintiffs’ allegations and briefs is that the credit check is alleged as further evidence or acts of fraud rather than as a separate cause of action. As such, the proper inquiry is whether the evidence is relevant to the fraudulent inducement claim and not whether a cause of action based on the credit check is prescribed.
*253 A motion in limine presents an evi-dentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000-0261 (La.2/2/2000), 753 So.2d 841; Randall v. Concordia Nursing Home, 2007-101 (La.App. 3d Cir.8/22/07), 965 So.2d 559, writ denied, 2007-2153 (La.1/7/08), 973 So.2d 726. This great discretion extends to the trial court’s assessment of the probative value of evidence. Green v. Claiborne Elec. Co-op., Inc., 28,408 (La.App. 2d Cir.6/26/96), 677 So.2d 635. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. La. C.E. art. 403.
The trial court found that evidence regarding the credit check would indicate a violation of federal or state law by Golden, would be highly prejudicial, and would far outweigh any probative value it might have. The exhibits show that the credit check was conducted in September 2000, | sinonths before Dowling approached Taylor on behalf of WVD about purchasing land. Though plaintiffs allege that the credit check was performed to give WVD an unfair advantage in negotiating the sale, neither the pleadings nor the record indicates that information obtained from the credit check played a part in the negotiations or is in any way related to the alleged misrepresentations by Dowling. For these reasons, we find no abuse of discretion by the trial court in granting the motion in limine to exclude the credit check evidence. These assignments regarding the trial court’s granting WVD’s motion in limine and exception of prescription as to evidence pertaining to the credit check lack merit.

No Right of Action

Plaintiffs argue that the trial court erred in granting the exception of no right of action filed by defendants against Taylor, individually. They argue that Taylor was damaged as a result of the fraud perpetrated by the defendants, that his claim is in tort, and that it does not require privity of contract.
Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681. The peremptory exception of no right of action tests whether the plaintiff has a legal interest in judicially enforcing the right asserted. La. C.C.P. art. 927(A)(6); Catfish Cabin of Monroe, Inc. v. State Farm Fire & Cas. Co., 35,710 (La.App. 2d Cir.2/27/02), 811 So.2d 222. It questions whether a plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n., 94-2015 (La.11/30/94), 646 So.2d 885. Whether a plaintiff has a right of action is a question of law that is subject to de novo review on appeal. Waggoner v. America First Ins., 42,863 (La.App. 2d Cir.1/16/08), 975 So.2d 110.
The personality of a corporation is distinct from its members. La. C.C. art. 24. Only the corporation, not its members, may sue to recover any damages it has sustained. Catfish Cabin, supra; Yarbrough v. Federal Land Bank, 31,831 (La.App. 2d Cir.5/5/99), 732 So.2d 1244. A shareholder has no separate or individual right of action against third persons for wrongs committed against or damaging to the corporation. Glod v. Baker, 2002-988 (La.App. 3d Cir.8/6/03), 851 So.2d 1255, writ denied, 2003-2482 (La.11/26/03), 860 So.2d 1135. This same rule applies even where one person may be the sole shareholder. Id., citing Mente & Company v. Louisiana State Rice Milling Co., 176 La. 476, 146 So. 28 (1933). A person who does business in corporate form and reaps the benefits of incorporation cannot sue indi *254 vidually for damages incurred by the corporation. Glod, supra.
TSC was the seller in each of the buy-sell agreements and the cash sale deed. Taylor represented TSC as its president in these transactions. The suit seeks rescission of the sale and damages. Because Taylor individually was not a party to the sale, any right of action for rescission and related damages due to fraud belongs solely to the corporation, TSC.
Taylor argues that his claim for damages is a tort claim for fraud based on misrepresentations made by Dowling “to induce TSC and Taylor to sell property to WVD.” However, this argument ignores the fact that only TSC sold property to WVD and that Taylor acted only in his capacity as president |nof TSC and was not a party to the sale. Even as the sole shareholder, Taylor cannot sue individually for damages incurred by the corporation. Taylor sold nothing to WVD. Any loss suffered by Taylor resulted from the adverse ruling on his zoning application, which either blocked or delayed the residential development of land he owned in his individual capacity. The propriety of that determination has already been addressed in TSC, Inc. v. Bossier Parish Police Jury, supra, which affirmed the decision of the MPC and police jury to deny the application to rezone the 1-2 property.
For these reasons, we find that the exception of no right of action against Taylor was properly granted.

Summary Judgment

TSC asserts that the trial court erred in granting summary judgment and that it weighed the evidence and made credibility determinations in concluding that Dowl-ing’s misrepresentations amounted to vague promises that cannot be considered fraud. TSC also argues that there are genuine issues of fact and that it should be allowed to introduce parol evidence to prove fraud.
The defendants counter that TSC lacks proof that the alleged misrepresentations by Dowling caused TSC to sustain the damages alleged in its pleadings. They argue that the statements by Dowling were promissory in nature, pertained to future events, and no evidence exists that they were made with the intent not to perform. Thus, they cannot be considered fraudulent. Lastly, defendants argue that the merger and integration clause 11⅞⅛ the buy-sell agreement precludes the introduction of parol evidence to prove fraud.
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of all but specifically excepted actions. La. C.C.P. art. 966(A)(2). Summary judgments are subject to de novo review on appeal. Suire v. Lafayette City-Parish Consolidated Government, 2004-1459 (La.4/12/05), 907 So.2d 37. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law, then summary judgment shall be rendered. La. C.C.P. art. 966(B). The nonmoving party may not rely on the allegations in its pleadings to oppose the motion. If the nonmover fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact, and the motion should be granted. Dowles v. Conagra, Inc., 48,074 (La.App. 2d Cir.3/26/08), 980 So.2d 180.
When reviewing a motion for summary judgment, the court may neither weigh conflicting evidence nor make credibility determinations. DeMoss v. Pine Hills Golf & Country Club, Inc., 42,033 (La.App. *255 2d Cir.4/4/07), 954 So.2d 316. Summary judgment is seldom appropriate for determining subjective facts such as intent, but it may be granted when there is no issue of material fact concerning the pertinent intent. Solow v. Heard, McElroy & Vestal, L.L.P., 44,042 (La.App. 2d Cir.4/8/09), 7 So.3d 1269.
| ,oA party may obtain recovery when it has suffered a loss due to intentional fraudulent misrepresentation. Swann v. Magouirk, 157 So.2d 749 (La.App. 2d Cir.1963); Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc., 433 So.2d 766, 767 (La.App. 5th Cir.1983), writ denied, 440 So.2d 756 (La.1983). Fraud is a misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage or to cause a loss or inconvenience to the other party. La. C.C. art. 1953. To vitiate consent, the error induced by fraud need not concern the cause of the obligation, but must concern a circumstance that substantially influenced the consent. La. C.C. art. 1955. In sum, the elements of an action for fraud include: (1) a misrepresentation, suppression, or omission of true information; (2) an intent to either obtain an unjust advantage or cause damage or inconvenience to the other party; and (3) the error induced by fraud must relate to a circumstance substantially influencing consent to the contract. Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60.
Fraud cannot be predicated on statements that are promissory in nature or relating to future events. Swann v. Magouirk, supra; Sun Drilling Products Corp. v. Rayborn, 2000-1884 (La.App. 4th Cir.10/03/01), 798 So.2d 1141, writ denied, 2001-2939 (La.1/25/02), 807 So.2d 840; Automatic Coin, supra. Failure to perform as promised or nonperformance of an agreement to do something at a future time alone is not evidence of fraud. Automatic Coin, supra. However, fraud may be based on promises made when there was no intention to perform as promised. Sun Drilling, supra. There must be an intent to defraud and actual or potential loss or damage to prove fraud. Id.
TSC seeks to attribute damages resulting from an adverse zoning decision to the defendants. It claims to have suffered economic losses and other damages caused by the defendants, who are alleged to have effectively blocked the residential development of TSC’s property. The gist of the complaint is that this would not have happened if the sale had not occurred, and there would have been no sale but for Dowling’s fraudulent misrepresentations. To succeed, TSC must prove that the defendants’ misrepresentations caused its damages. It will not be able to satisfy this element of its claim at trial.
TSC cannot prove that its alleged damages were caused by the defendants when it was an adverse zoning decision by the governing authorities that disrupted its plans. The MPC and the Bossier Parish Police Jury denied the application to rezone TSC’s and/or Taylor’s industrial property. This decision was upheld by the district court and this court. We concluded that the zoning denial was not arbitrary or capricious. Rather, the denial was based on the incompatibility of having a residential subdivision amidst an area of heavy industrial usage and “considerations of public health, safety, and general welfare.” TSC, Inc. v. Bossier Parish Police Jury, 38,717, p. 13, 878 So.2d at 887-888.
Though the crux of this matter is the adverse zoning decision, none of the alleged representations by Dowling related to zoning. Taylor stated in his deposition that he did not talk to Dowling about zoning. Dowling’s | ^deposition testimony, part of which was introduced by TSC in *256 opposition to summary judgment, explains that WVD was seeking property zoned for industrial purposes because its eventual use of the land would not be compatible with residential development. The 9.5 acres purchased by WVD from TSC were zoned 1-2 for heavy industrial use and were located in an area where other landowners used property for industrial purposes. Nothing in the negotiations, buy-sell agreements, or cash sale deed restricts WVD or its undisclosed principal, Builder’s Supply, from continuing to make use of the 9.5 acres for industrial purposes or from opposing zoning changes that might impede its use of the property.
TSC will not be able to prove that the adverse zoning decision was attributable to WVD and Dowling. Other landowners objected, and the decision was supported by legitimate public welfare concerns.[4] Any contention that the result would have been different if the sale had not occurred or if defendants had not opposed rezoning is speculation. Because TSC will not be able to prove that the sale to WVD and the alleged misrepresentations by Dowling were the cause of its damages, namely the delay or blockage of its residential development plans, summary judgment was appropriate.
The lack of evidence that the alleged misrepresentations constitute fraudulent inducement also supports summary judgment. That Dowling did | ^not disclose the identity of the true purchaser or its intended use of the property is not disputed. TSC was aware that Dowling through WVD was representing a purchaser who wished to remain anonymous. TSC decided to sell the 9.5 acres to an anonymous purchaser without knowledge of how it intended to use the 1-2 property in the future. TSC claims its consent was induced by Dowling’s assurance that the purchase was for “investment purposes” and that the purchaser’s use the property would not interfere with residential development of the remaining property. TSC also claims to have relied upon Dowling’s stated interest in becoming a partner in the development or in marketing the development through his firm. TSC alleges that Dowling urged it to hurry to close the sale so that they could proceed with the residential development.
The alleged fraudulent misrepresentations are promissory in nature and relate to future events about what might occur on the property sold to WVD and the property TSC planned to develop as a subdivision. We agree with the trial court’s assessment that the statements are vague. Any purchase of property can be described as being for “investment purposes.” Though TSC claims to have relied on Dowling’s assurance that the purchaser had no immediate plans for development that would interfere with its plans or that it would be years before the purchaser did anything, no time was specified to indicate whether these statements referred to two years, five years, or more before the purchaser made use of the property. Notably, there is no allegation that Dowling represented that the purchaser would never use the property in a manner incompatible with residential development.
117PowIing’s alleged misrepresentations about partnering in TSC’s development, *257 marketing the property, and closing the sale so that TSC’s development plans could proceed are, at most, expressions of interest in taking some future action if the development proceeded.[5] The statements do not evidence the formation of any partnership agreement or other contractual arrangement between Dowling and TSC that would engender genuine rebanee. At the time these representations were made, there was no firm plan for the residential development. Taylor admitted in his deposition that he did not give Dowling details about his development plans prior to the closing. Because the alleged misrepresentations are vague, promissory, and relating to future use of the property, we find that TSC will be unable to meet the burden of proving fraud.
We recognize that a finding of fraud depends largely upon intent, which is an issue that is typically not appropriate for summary judgment. Moreover, parol evidence may be admitted against a writing to prove a vice of consent. La. C.C. art. 1848. These considerations are not persuasive in this instance where the summary judgment is supported by the lack of a causal connection between the damages and fraudulent conduct alleged in the pleadings.
We also note that each buy-sell agreement included a “merger and integration” clause declaring the document to be the entire agreement between the parties and to supersede all other “agreements, understandings, negotiations, offers, promises and discussions, whether oral or written.” [mThe cash sale deed and the buy-sell agreement upon which it was based are clear and unambiguous. Nothing in the buy-sell agreement executed on July 26, 2001, and the resulting sale on October 23, 2001, refers to the alleged misrepresentations, restricts use by the purchaser of the 9.5 acres, or prohibits the purchaser from opposing zoning changes on neighboring property that might impede the use of its own 1-2 property. The first and second buy-sell agreements, which were signed by Taylor on behalf of TSC though ultimately not executed, indicate that TSC was aware that the purchaser’s use of the property might be incompatible with a residential development. The February 27, 2001, agreement makes the sale contingent on disclosure of the buyer, the intended use of the property, and the expected vehicular traffic. The March 18, 2001, agreement includes a provision requiring the buyer to provide screening by planting trees or bushes on a 10-foot wide strip of land when it begins development of the property. Joey Hendrix, an attorney representing TSC in the sale, explained in his deposition that the buffer zone was discussed in connection with the sale of a larger tract of property and the potential effect on TSC’s plans. They considered that a buffer might be necessary once the purchaser did whatever it planned to do on the property. Clearly, TSC contemplated during negotiations that the purchaser’s eventual use of the industrially zoned property would not necessarily be compatible with its residential development plans and considered ways to minimize the incompatibility between residential and industrial uses. Neither its failure to include in the final agreement or cash sale deed restrictions to protect its development |19plans nor its decision to sell 9.5 acres of its land to WVD is attributable to fraudulent inducement.
For these reasons, we find that there is no genuine issue of fact for trial and that *258 summary judgment is appropriate as a matter of law.
CONCLUSION
We affirm the trial court’s judgment as explained in this opinion. Costs of appeal are assessed to the appellants.
AFFIRMED.

. Patricia Taylor, who was then the wife of Larry Taylor, was also a plaintiff in the suit. The Taylors divorced during this course of litigation, and she was eventually dismissed as a party in this matter.

. The petitioners also alleged that Dowling represented to them that he was acting as a real estate agent and failed to disclose that he was a member and manager for WVD. However, as early as the February 2001 buy/sell agreement, petitioners would have been aware of Dowling's status as it is clearly indicated on that agreement and the subsequent agreements.

. La. C.C. art. 2032 provides, in relevant part, that an action for annulment of a relatively null contract must be brought within five years of discovery of fraud.

. Plaintiffs asserted that Carleton Golden, owner of Builder's Supply and WVD, sought to improperly influence the zoning decision through his position as chairman of the Great Bossier Parish Economic Foundation by which he directed that organization to send a letter opposing rezoning to the police jury. However, any allegation of improper influence over the zoning decision should have been addressed in the case challenging that decision.

. We note that the parties had been negotiating for about nine months. Two buy-sell agreements had been proposed without resulting in a sale.