STEPHEN J. WINDHORST, Judge.
|2Appellants, Bayou Fleet Partnership and Bayou Fleet, Inc. (“Bayou Fleet”), appeal the trial court’s April 8, 2013 judgment. For the reasons that follow, the judgment is reversed in part, and affirmed in part. Of the two parcels of property at issue in this litigation, one is commonly referred to as “Rivarde Tract.” Rivarde Tract is a parcel of batture property, ie., property between the Mississippi River and its levee, in Hahnville, Louisiana, near the lower Mississippi River mile marker 125. This parcel measures 312 feet wide along the Mississippi River, and is approximately 1600 feet deep. On June 2, 1999, a Judgment of Partition of Immovable Property was rendered in the 24th Judicial District Court for the Parish of Jefferson[1] and registered in the St. Charles Parish Conveyance Records. The judgment divided Rivarde Tract into three lots (Lots A, B, and C) and awarded ownership of Lot A to Home Place Batture Leasing, Inc.[2] (“Home Place”) and ownership of Lots B and C to Bayou Fleet [.-¡Partnership.[3] Lot A lies upriver from Lots B and C and abuts a roadway formerly known as the Morgan Street Extension.[4] A portion of Morgan Street is publicly owned while the remainder (Morgan Street Extension) is privately owned by Home Place.[5] The *332 Morgan Street Extension provides ingress and egress to Lot A from the River Road by traversing the Mississippi River levee.
The property downriver from Lots B and C is known as Homeplace Plantation, and is also owned .by Home Place. Home-place Plantation is presently leased in part to James Marine,[6] a ship repair facility. Homeplace Plantation also contains two sandpits and an area used for storing limestone. The sandpits are filled by dredging, primarily performed by Wood Dredging, that pumps river sand from the river in front of Home Place’s downriver property. Homeplace Plantation is the other parcel of property that is at issue in this litigation.
In 1999, Bayou Fleet was granted a permit by the U.S. Army Corps of Engineers to “install and maintain two anchor piles, chains, and bouys for a one |4tier barge fleet in the Mississippi River, RDB, at a point about 124.6 miles above the Head of Passes, near Hahnville, Louisiana, in St. Charles Parish.”[7] Bayou Fleet received a second permit authorizing it to moor barges in the river. Bayou Fleet installed Tier 7 which was originally held in place by chains attached to two dead-men located on Bayou Fleet’s property (Lots B and C).
Bayou Fleet instituted the present proceeding by filing a Petition for Right of Passage contending that its property (Lots B and C) is currently an enclosed estate having no access by public or private road and is surrounded by property owned by Neal and Mary Clulee (“the Clulees”) and/or Home Place on the North, South, and West sides and by the Mississippi River on the East side. Bayou Fleet claimed that it was entitled to a gratuitous right of passage over the road previously known as the Morgan Street Extension, all the way up to the Mississippi River’s edge and over and across Home Place’s property (Lot A) at a location above the normal high water mark, as the lower lands are primarily composed of wetlands and are impassable. Bayou Fleet contended that without this right of passage it would be unable to use, maintain, or develop its property. Bayou Fleet claimed that it has been unable to repair and maintain the mooring system located in the Mississippi River in front of its property, resulting in the potential for barges to drift over and in front of Home Place’s downriver property when the river is high.
The Clulees and Home Place answered the petition and filed a reconventional de *333 mand and third party demand against Bayou Fleet seeking damages for continuing trespass and/or interference with their riparian property rights, as well as damages for mental distress, frustration, and substantial inconvenience. The Clulees and Home Place sought a preliminary and permanent injunction against Bayou Fleet to enjoin Bayou Fleet from mooring, docking, ^warehousing, holding or permitting vessels held in place to extend in front of their property. The trial court granted the preliminary injunction as requested.
After a trial on the merits, the trial court found in favor of plaintiffs-in-recon-vention, Mary and Neal Clulee and Home Place, and against defendant-in-reconvention, Bayou Fleet, for damages in the amount of $140,000.00. On the original demand, the trial court granted Bayou Fleet a non-gratuitous right of passage. Bayou Fleet appealed.
Trespass
In its first assignment of error, Bayou Fleet contends that the trial court erred in awarding damages to Home Place. Bayou Fleet argues that shareholders or members of an incorporated entity cannot bring an action for mental anguish, frustration, or inconvenience. Bayou Fleet contends that the entity, Home Place, is the proper party to bring a claim for its damages for trespass and that Mary and Neal Clulee, individually, as owners and/or members of Home Place, are not proper parties to bring an action for trespass concerning property owned by Home Place. Bayou Fleet contends that since the trial court found that Home Place did not prove any business losses, such as leases or profits, Home Place is not entitled to any damages. Furthermore, Bayou Fleet contends that the trial court erred in awarding nominal damages in the amount of $140,000.00 based on Phillip Family, LLC v. Bayou Fleet Partnership, 12-565 (La.App. 5 Cir. 2/21/13), 110 So.3d 1158.
An appellate court may, sua sponte, raise the peremptory exceptions of no right of action and no cause of action. La. C.C.P. art. 927B; See also Ezzell v. Mírame, 13-349 (La.App. 5 Cir. 12/30/13), 131 So.3d 1093, 1098 n. 4; Moreno v. Entergy Corp., 10-2268 (La.2/18/11), 64 So.3d 761, 762.
In An exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Marks v. Third Dist. Volunteer Fire Dept., 13-383 (La.App. 5 Cir. 12/30/13), 131 So.3d 1099, 1101. An exception of no right of action assumes the petition states a valid cause of action and questions whether the plaintiff has a legal interest in the subject matter of the litigation. I'd. No evidence may be introduced to support or controvert an exception of no cause of action and the facts alleged in the petition must be accepted as true. Id.; La. C.C.P. art. 931. Conversely, evidence may be introduced to support or controvert and exception of no right of action. Id. Any doubt as to the sufficiency of the petition to state a cause of action or whether a plaintiff has a right of action must be resolved in favor of the plaintiff.
The personality of a corporation is distinct from its members. La. C.C. art. 24. Only the corporation, not its members, may sue to recover any damages it has sustained. Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App. 2 Cir. 10/7/09), 22 So.3d 246, 253. A shareholder has no separate or individual right of action against third persons for wrongs committed against or damaging to the corporation. Id., citing Glod v. Baker, 02-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255, writ denied, 03-2482 (La.11/26/03), 860 So.2d 1135. This same rule applies even *334 where one person may be the sole shareholder. Id. (citations omitted). A person who does business in corporate form and reaps the benefits of incorporation cannot sue individually for damages incurred by the corporation. Id. at 253-254; See also Scaffidi and Chetta Entertainment v. University of New Orleans Foundation, 04-1046 (LaApp. 5 Cir. 2/15/05), 898 So.2d 491, 494; Hinehman v. Oubre, 445 So.2d 1313 (La.App. 5 Cir. 2/6/84).
The trial court awarded damages in favor of Mary and Neal Clulee and Home Place against Bayou Fleet in the amount of $140,000.00. It is clear from the ^record that Home Place, an incorporated entity, is the owner of the property at issue in the claim for trespass. Mary and Neal Clulee are owners and/or members of Home Place and thus, individually, have no right or cause of action for trespass as to property owned by Home Place. It is well settled that individuals who do business as a corporation and avail themselves of the benefits of incorporation remain separate from the corporation, and may not individually sue for damages incurred by the corporation. Accordingly, we find that the trial court erred in awarding damages to both Mary and Neal Clulee, individually, and to Home Place. If an award for damages is appropriate, the only proper party entitled to receive that award is Home Place.
A trespass occurs when there is an unlawful physical invasion of the property or possession of another person. Sellers v. St. Charles Parish, 04-1265 (La.App. 5 Cir. 4/26/05), 900 So.2d 1121, 1127. It is incumbent upon the plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. Id. The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. Id. One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. Id. However, minimal and normal worry and inconvenience are not compensable. See Griffin v. Abshire, 04-0037 (La.App. 3 Cir. 6/2/04), 878 So.2d 750, 758, writ denied, 04-1663 (La.10/8/04), 883 So.2d 1018; Vial v. South Central Bell Telephone Co., 423 So.2d 1233, 1239 (La.App. 5 Cir.1982), writ denied, 432 So.2d 265 (La.1983).
In Louisiana, only compensatory and not punitive or exemplary damages are recoverable for injury to property. M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708,' 711 (La.App. 3 Cir.1982). In assessment of damages arising out of | ^trespass the trial court has much discretion, but the damage must be certain, and the discretion exercised only to the extent of the damage and ascertained from all of the facts and circumstances. Id. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all of the facts and circumstances. Britt Builders, Inc. v. Brister, 618 So.2d 899 (La.App. 1 Cir.1993). However, a corporate entity cannot experience mental anguish. M & A Farms, Ltd., 422 So.2d at 711, citing Wendorf v. Corley, 394 So.2d 1252 (La.App. 3 Cir.1980).
The trial court found that Bayou Fleet accessed and used the Clulee property in question over a ten year period and thus, found that Bayou Fleet trespassed over the property for the entire ten years. The trial court also found that the Clulees and Home Place’s claims of lost business opportunities, lost rentals, and reduction in property value were not corroborated by any competent evidence. In finding that the claim for trespass was established by a preponderance of the evidence, the trial *335 court noted that while the trespasses were on a frequent basis, they were apparently not on a daily basis. Even though the trial court found that the evidence at trial did not provide a guide for assessing the trespass damages, the court nonetheless awarded nominal damages in the amount of $140,000.00 for the 120 months of trespass proven, relying on Phillip, supra, as a guide.
Robin Durant, managing partner[8] of Bayou Fleet, testified that he traversed the entirety of the Morgan Street Extension and then cut across Lot A along the riverfront to access his property (Lots B and C) and to check on the two deadmen attached to Tier 7 located in front of his property. He testified that he traversed this route at least 200 times from 1992 to 2005. Mr. Durant conceded that he never obtained permission from the Clulees to ti’averse over the road and Lot A.
| ^Additionally, Mr. Durant testified that Tier 7 is located adjacent to Bayou Fleet’s ownership of Lots B and C, approximately 215 feet in front on the river just above Home Place’s downriver property (Home-place Plantation). Prior to the installation of the monopoles in 2010, Tier 7 was kept in place by two deadmen located on Bayou Fleet’s property. Mr. Durant testified that barges do drift in front of the downriver property owned by Mr. Clulee. He testified that “[fit’s not infrequent, but it’s not every day.” Mr. Durant testified that the barges would only hang over the downriver property for a couple of hours or less.
Mr. Durant testified that prior to 2005, Bayou Fleet had to maintain the deadmen two to three times a year. He acknowledged that for short periods of time when the river was high, the spar barge would drift such that Tier 7 would encroach upon the property owned by the Clulees. Mr. Durant testified that when the river has a “bump in it” (large amount of rain causing the river to rise), Bayou Fleet would not adjust chains on the deadmen if the river was only going to rise for short period of time. Mr. Durant testified that he sent a letter to the U.S. Army Corps of Engineers to explain this “sluffing down.” He testified that he had no intent to block the Clulees access to their property.
After 2005, Mr. Durant testified that there was drifting or moving of Tier 7 because he could not get to the mooring system to maintain it. Mr. Durant testified that there was no way to prevent movement of the spar barge at Tier 7 down river in front of the Clulees’ property, at least no way “economically.”
The Clulees testified that they never gave Bayou Fleet permission to overhang or fleet in front of their downriver property and the overhang or fleeting occurred continuously, though not every day, from 1999 to 2010. The Clulees submitted numerous photographs from 1999 to 2010 that depicted overhanging or fleeting by Bayou Fleet in front of the downriver property.
|inThe Clulees further testified that although the property Was currently leased, they were unable to market the remainder of the downriver property because they had no water access due to Bayou Fleet’s fleeting. Mr. Clulee conceded that the fleeting did not occur on part of the downriver property. Mr. Clulee testified that he believed he lost $200,000.00 a year because of his inability to market the downriver property, but conceded that he did not have any documentation with him to *336 support his marketing attempts, and no evidence was introduced. Mr. Clulee attempted to establish the value of his damages through the testimony of Daniel Wise and Warren Duffy. However, the trial court sustained Bayou Fleet’s objection and found that these individuals were not experts in real estate valuations and their testimony was not relevant. The Clulees were allowed to proffer the testimony of Mr. Wise and Mr. Duffy.[9]
Considering the evidence and testimony, we find that the trial court did not err in finding that Bayou Fleet trespassed on the upriver and downriver property owned by Home Place. While Home Place is legally entitled to an award of damages for the trespass, we can find no evidence to support the award given by the trial court. The property did not suffer any physical damage and Home Place did not establish its claims of lost business opportunities, lost rentals, reduction in property value, or inability to market property. The $140,-000.00[10] award for trespass was apparently intended by the trial court as an award for mental anguish suffered as a result of the trespass, since no other damages may be inferred from the acts. The circumstances and testimony reveal, at most, “minimal and normal |n distress or inconvenience.” Since a corporation cannot suffer mental anguish, the trial court erred in awarding nominal damages for trespass to Home Place and this portion of the judgment must be reversed.
Right of Passage
In its second assignment of error, Bayou Fleet contends that the trial court erroneously awarded passage across Lot A that is burdensome and economically prohibitive. The passage awarded would require Bayou Fleet to build roadways horizontally across Lot A and vertically along its own property to the river. Bayou Fleet contends that this route is unreasonable and impractical, considering that Rivarde Tract is bordered by private roadways on its upriver and downriver borders which are be suitable for the light traffic Bayou Fleet previously utilized.
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. La. C.C. art. 646. The owner of an enclosed estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. La. C.C. art. 689. The owner of the enclosed estate may not demand the right of passage anywhere he chooses. La. C.C. art. 692. The passage generally shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands. Id. However, La. C.C. art. 694 provides that if property becomes enclosed due to a partition, then passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road, and even if the partition does not mention a servitude of passage. This provision is manda *337 tory and the only requirement is that the passage was previously used or exercised .prior to the partition. Fuller v. Wright, 464 So.2d 350, 852 (La.App. 2 Cir.1985), writ denied, 465 So.2d 737 (La.1985).
112Bayou Fleet, as owner of the dominant estate (Lots B and C), seeks a right of passage over the portion of the Morgan Street Extension privately owned by Home Place and a portion of the adjacent servient estate, also owned by Home Place (Lot A). The route proposed by Bayou Fleet would travel the entirety of the private portion of the Morgan Street Extension abutting Lot A and would cross the width of Lot A which fronts the Mississippi River to reach Lots B and C.
The trial court found that Bayou Fleet’s property (Lots B and C) became an enclosed estate when Rivarde Tract was subdivided into Lots A, B, and C in the 1999 partition proceeding. A review of the record indicates that the trial court did not err in that determination.
Bayou Fleet contends that it is entitled to a gratuitous right of way traversing the Morgan Street Extension, both the public and private portions, and across the bat-ture that fronts Lot A to access Lots B and C owned by Bayou Fleet.
Robin Durant testified that he used this route prior to and after the partition. He testified that he used this route about 200 times in 15 years (1992 to 2005). Mr. Durant testified that he informed his employees before the partition to utilize Morgan Street, including Morgan Street Extension to access Bayou Fleet’s property. He assumed that they always used this route to gain access to Bayou Fleet property. Mr. Durant admitted that pre-partition (1993, 1994, or 1995), he was able to access a different part of his property by a route between Bayou Fleet’s property and Homeplace Plantation (the downriver property) that did not involve the use of Morgan Street Extension. During that time frame, Bayou Fleet used the other route to install posts or railroad ties to separate Bayou Fleet property and Home-place Plantation.
Mr. Durant testified that in 1996 or 1997, Bayou Fleet was not using their land on Rivarde Tract for any purpose. He testified that the land had been 1 ^excavated and was in litigation. Since Bayou'Fleet only owned an undivided two-thirds interest in the property pre-partition, it was not interested in trying to develop anything while another party still owned an undivided one-third interest in the property. Mr. Durant testified that Bayou Fleet filed a partition by licitation in 1996 against the one-third interest owner, and the property was partitioned in kind in June of 1999 with Bayou Fleet owning two-thirds of the property (Lots B and C) and Home Place owning one-third of the property (Lot A).
John Batson testified that he worked for Bayou Fleet from January 2000 to December 2004. Once a month he would check on the deadmen and cut the grass. The equipment he used was located in a shed on Bayou Fleet property. Mr. Batson testified that he took three different routes to access Bayou Fleet’s property. Although Mr. Batson testified that he used Morgan Street in two of the routes, he conceded that he never drove down the side of the Morgan Street Extension owned by the Clulees.
Mitchell Folse testified that since his employment with Bayou Fleet in 2005, he personally went to Tier 7 twice a year to check on the deadmen, but he only used a “Joe Boat.” He testified that when he started working, he was told that he could not use any of the roads and he never crossed the property or road owned by the Clulees.
*338 Oneal Jarreau testified that in the 32 years of working for the Clulees on the downriver property, he never saw Mr. Durant drive or walk down the former Morgan Street Extension. Mr. Jarreau testified that he never granted Mr. Durant permission to access the downriver property. He testified that he has travelled down Morgan Street Extension with Mr. Clulee a couple pf times and he never saw anyone else go down Morgan Street Extension to the river.
| MNeal Clulee testified that he owned Lot A and Morgan Street.[11] He testified that he did not give Mr. Durant or Bayou Fleet permission to be on his property. He further testified that he did not know that Mr. Durant’s personnel used the Morgan Street Extension to access Bayou Fleet property.
Based on the testimony, Bayou Fleet failed to establish that it is entitled to a gratuitous right of way travelling the entirety of Morgan Street, including the Morgan Street Extension, the public and private portions, and then across the bat-ture at the front of Lot A to access its property located on Lots B and C. To obtain a gratuitous right of way, Bayou Fleet had to prove that the passage requested was previously used or exercised prior to the partition. The evidence presented indicates that Mr. Durant seldom used the proposed route prior to the partition, and the route was not used by Bayou Fleet’s employees prior to the partition in 1999. The testimony established that pri- or to the partition, Bayou Fleet accessed their property near the boundary of Home Place’s downriver property by a different route. Because the requested passage was not previously used or exercised prior to the partition, La. C.C. art. 694 is inapplicable.
Bayou Fleet’s remedy is therefore provided by La. C.C. art. 692, which entitles Bayou Fleet to passage along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening lands. The route determined by the trial court is the shortest, least injurious route over the servient estate (Lot A) owned by Home Place.[12] Lots A, B, and C are wetlands. The | ir,evidence and testimony established that the river *339 side of these lots is prone to flooding at different depths throughout the year due to the rise and fall of the river. While the area at the toe of the levee floods occasionally due to rain, the flooding can be remedied by proper maintenance of the landowners. The route determined by the trial court stays drier during the year than the route requested by Bayou Fleet. Furthermore, because Bayou Fleet is not entitled to gratuitous passage, La. C.C. art. 691 authorizes Bayou Fleet to construct on the right of way the type of road necessary for the exercise of the servitude. Accordingly, we find that the trial court’s determination of the route for right of passage in favor of Bayou Fleet was not manifestly erroneous, and we affirm.
Conclusion
For the reasons stated above, the judgment granting general damages to plaintiffs-in-reeonvention, Mary and Neal Clu-lee and Home Place Batture Leasing, Inc., and against defendant-in-reconvention, Bayou Fleet Partnership, for damages in the amount of $140,000.00 is hereby reversed. The judgment granting Bayou Fleet Partnership a right of passage is hereby affirmed.
REVERSED IN PART; AFFIRMED IN PART.

. Bayou Fleet Partnership v. Agnes R. Saia, et al, Docket No. 489-381, Div. G., Twenty-fourth Judicial District Court, Jefferson Parish, Louisiana.

. Home Place Batture Leasing, Inc. is owned by Neal and Mary Clulee.

. Bayou Fleet Partnership, as owner of Lots B and C, allowed Bayou Fleet, Inc. to fleet barges in the Mississippi River in front of its property pursuant to an U.S. Army Corps of Engineers permit.

. This street is also referred to in the record as the Extension of Morgan Street. It is currently referred to as Smith Street.

. In Clulee v. Giambelluca, 00-1057 (La.App. 5 Cir. 1/23/01), 77 So.2d 1259, writ denied, 01-0789 (La.5/4/01), 791 So.2d 660, the Clu-lees and Home Place (referred to as "the Clulees” throughout opinion) sought a declaratory judgment regarding ownership of the former Morgan Street Extension. The trial court found that after St. Charles Parish revoked the dedication of the Morgan Street Extension, as provided by La. R.S. 48:701, the plaintiffs and defendants each acquired ownership of one-half of the 50-foot road bed between their properties. In affirming the trial court's judgment, this Court found that "the parties each acquired one-half of the road bed when the Parish revoked the dedication.” Id. at 1262. It is noted by this Court that there was no determination as to whether the Clulees and/or Home Place owned their one-half of the road bed or who was the proper party to bring the declaratory judgment. In Clulee v. Giambelluca, 08-645 (La.App. 5 Cir. 5/12/09), 15 So.3d 214, Bayou Fleet sought to intervene in the suit brought by Mary and Neal Clulee and Home Place against other defendants wherein the Clulees and Home Place sought damages for trespass on the portion of Morgan Street Extension owned by the Clulees and Home Place, as *332 well as other damages. Bayou Fleet moved to intervene which was denied by the trial court. On appeal, this Court found that ''[pjursuant to the 1999 partition sought by Bayou Fleet, the Clulees obtained 100% of the rights particular to the northernmost one-third of the Rivarde Place, which happened to include ownership of the adjacent 25-foot strip formerly known as the Morgan Street extension.” [Emphasis added] Id. at 221. This Court then found that the trial court was correct in refusing to allow Bayou Fleet’s intervention. Id. This court did not make a distinction between the plaintiffs, the Clulees and Home Place, in this case. We note that in the 1999 partition, Lot A was awarded solely to Home Place, not to the Clulees. Accordingly, pursuant to the 1999 partition and this Court's opinion in the above case, Ilome Place, not the Clulees, was awarded 100% of the rights particular to the northernmost one-third of the Rivarde Tract, which included ownership of the adjacent 25-foot strip formerly known as the Morgan Street Extension.

. In 2011, James Marine bought TT Barge and assumed the lease previously in place by TT Barge and Home Place at the downriver property. TT Barge operated a barge repair shipyard, where it serviced and maintained inland river barges. The barges that TT Barge repaired were often fleeted at Bayou Fleet’s Tier 7.

. RDB is the river’s right descending bank.

. Mr. Durant is referred to as the managing partner or owner of Bayou Fleet throughout the record.

. Although appellees proffered the excluded testimony, they did not file an appeal or an answer to this appeal. Accordingly, whether the trial court was correct in sustaining Bayou Fleet’s objection is not before this Court on review.

. In Phillip, the trial court awarded $140,000.00 for lost lease revenue based on specific expert testimony. Phillip, 110 So.3d at 1166-1168. In this case, Home Place did not present any expert testimony or other evidence concerning lost business opportunities, lost rentals, reduction in property value, or inability to market property. Mr. Clulee did not present any documentation at trial to support these claims. The trial court found that Home Place failed to corroborate its claims.

. This Court notes that Mr. Clulee did not testify as to whether he owned the property and road individually or through his corporation. The evidence shows that the property and road are in fact owned by Mr. Clulee’s • corporation, Home Place. Mr. Clulee specifically testified that Morgan Street was part of the partition. Because the partition awarded ownership to Home Place, Morgan Street belongs to Home Place.

. The April 8, 2013 judgment’s right of passage:
Beginning at the point of that certain roadway known as “Extension of Morgan Street" and the point common with the northernmost point of the toe of the Mississippi River Levee (the "point of beginning”); travel in a southerly direction across the rear boundary of Lot A of the Old Rivarde Tract along the line separating said Lot A from the toe of said levee a distance of 114.02 feet (more or less) to a
point common to Lot B of said Old Rivarde Tract; thence travel towards the Mississippi River a distance of 30 feet along the line separating said Lot A from Lot B to á point; ' thence travel in a northerly direction a distance of 114.02 feet (more or less) across Lot A along a line 30 feet distant from and parallel to the aforementioned rear boundary line of Lot A (said rear boundary line separating said Lot A from the toe of said levee) to a point on that certain roadway known as "Extension of Morgan Street,” thence a distance of 30 feet towards the levee along said roadway known as "Extension of Morgan Street” to the “point of beginning." (Said Lot A and Lot B are as per survey introduced at trial herein as Joint Exhibit 17, a copy of which is attached hereto and made a part hereof. The "point of beginning” above-referenced has been designated by the Court on said copy.)